### No. 6675.   -

JOACHIM BORDE VS. WIDOW WM. ERSKINE ET AL.   MRS. J. A. FERNANDEZ, A THIRD PERSON, APPELLANT.

|  |  |
|---|---|
| 33 | 873 |
| 47 | 1649 |
| 33 | 873 |
| 48 | 714 |
| 33 | 873 |
| 52 | 67 |

#### ON THE MOTION TO DISMISS.

When the Appellant files a supplemental petition for the purpose of having one of the Appellees cited, who had been omitted in the original petition of appeal, no additional bond needs be furnished. The original bond in favor of the clerk of court will suffice.

Illegal service of citation of appeal, not attributable to the Appellant, will not cause the dismissal of the appeal.

Although the proper and regular mode of perfecting the Transcript, is by a writ of *Certiorari*, it is useless to issue such writ when certified copies of the missing documents have been filed. Affirming the rule in City of Baltimore vs. Parlange, 25 An. 335.

#### ON THE MERITS.

Mortgage creditors, ruled into court to show cause why their mortgages should not be erased, on the ground that the mortgaged property was judicially sold to effect a partition,—have the right to show and urge the nullity of the sale.

When, under the provisions of Article 132 of the Constitution of 1868 and Act No. 40 of 1869, a plantation was divided into lots of from ten to fifty acres, but, at the sale, the auctioneer announced that he would offer one lot first and that the purchaser would have the privilege of taking the other lots at the same price, and the sale was made accord-ingly,—the mandate of the law that such lots be sold separately, has not been obeyed, and such sale is null and void.

APPEAL from the Second Judicial District Court, parish of Plaque-mines.   *Pardee, J.*

*Sambola & Ducros* and *Thos. J. Semmes*, for Mrs. Fernandez, Appel-lant.

*Carleton Hunt, J. Ad. Rozier, Kelly & Lazarus, J. B. Eustis*, for the Mortgage Creditors, Appellees.

### On Motion to Dismiss.

The opinion of the Court was delivered by

MANNING, C. J.   The plaintiff instituted a suit for the partition of a plantation owned by him in common with the defendants, in which there was rendered a judgment for a partition by licitation. There was a sale, and Mrs. Carmen Fernandez was the purchaser.   In March, 1877, Borde, the plaintiff, alleging that the property was incumbered with certain mortgages which he describes, and that Mrs. Fernandez was the adjudicatee, and that their erasure is necessary to give her a clear title, took a rule to show cause why they should not be erased.   The rule was served on all the joint owners, and upon the under tutor to two minors who were defendants, whose mother and tutrix was a co-defendant, and also upon the mortgagees, except one.   On trial, the rule was discharged, and Borde appealed.   He furnished no bond, and abandoned the appeal.

In April the purchaser prayed an appeal by petition, making all the mortgagees and owners parties, except Borde, which was granted upon a bond of two hundred and fifty dollars, which was duly executed with surety.   Subsequently, upon discovering that Borde had been omitted, she filed a supplemental petition supplying the omission, and there was an order making him a party, and he was cited.   No additional bond was given.

The motion to dismiss is based on several grounds.   One of them is that the failure to execute a new and additional bond vitiates the appeal as to Borde, who is a necessary party.   This is untenable.   The bond is in favor of the clerk, and all parties to the appeal can recover on it.   And besides, if Borde himself does not complain of the want of an additional bond, it is not for the appellants to complain for him.   The circumstance that Borde's name was not included in the original petition for appeal would have been fatal, had the defect not been cured by the supplemental petition and citation upon it.   We are referred to several decisions to the effect that those only are parties to the appeal whose names are in the bond.   All of them are under the old law which required the insertion in the appeal bond of all the parties, a provision which sometimes was so incapable of sure fulfillment that the legislature tardily, but effectually, removed the difficulty by substituting the name of the clerk, and authorizing the parties to avail themselves of it.

Another ground for dismissal is the want of proper citation to the under tutor.   He was a party to the partition suit, and was regularly cited therein.   The citation of appeal was served on his attorney, which is the proper mode of service on a non-resident.   Code of Practice, article 582.   But he is a resident of the State, and was at that time, if the sheriff's return be correct, absent.   The service should have been

at his domicil. Ratliff vs. Creditors, 14 La. 292. Under the act of 1839, an appeal will not be dismissed on the ground of irregularity in the service of citation, if it is not imputable to the appellant. We think that statute protects the appellant in this case. She alleged in her petition of appeal that the under tutor was a resident of New Orleans, and prayed for his citation. The sheriff should have known how to cite him. There is nothing before us to show that the appellant, or even her attorney, misdirected the sheriff, and by her own fault caused an improper service to be made.

Another objection is urged that the record is incomplete, and the appellant has attemped to supply its deficiencies by filing along with it a copy of a missing paper. The clerk also makes a supplemental certificate as to some omitted words in the transcript. These omissions are attributable to the clerk, and should not prejudice the appellant. The proper and regular mode of perfecting the transcript is by a writ of *certiorari*, but, as was said in Baltimore vs. Parlange, it is useless to order the writ when certified copies of the missing documents have been filed. 25 An. 335.

The facility for dismissing appeals that formerly existed, and of which parties constantly availed themselves to the great detriment of substantial justice, has been restricted by the wise substitution of an officer to the names of the litigants in the appeal bond, so that an appeal by motion can rarely be dismissed for technical objections. It would be an equally wise amendment of the law, if the process of taking and serving an appeal by petition were simplified by some equally effectual means.

The motion to dismiss is denied, and the case is continued with leave to the appellant to have the under tutor properly cited.

## ON THE MERITS.

The opinion of the Court was delivered by

Levy, J. This appeal is taken from a judgment of the District Court discharging a rule on certain mortgagees for the cancellation of their mortgages on certain property adjudicated to Mrs. J. A. Fernandez at a partition sale, made by order of the District Court, on the 24th of June, 1876.

The property thus adjudicated consisted of three tracts of land, acquired at different times, all of which comprised what is known as the "Alliance Plantation." It was owned by Joachim Borde, *one-eighth*, George Urquhart *one-fourth*, Mrs. George Urquhart *one-fourth*, Mrs. Ernestine Erskine *one-eighth*, the minors Mary Erskine and Clementine Erskine, together, *one-fourth*.

Borde instituted a suit praying for a partition by licitation, alleging that said property was not susceptible of a division in kind.

There was an order directing an inventory and appraisement; all the property, including the movables thereon, were appraised in block at the sum of $30,000, and there was judgment decreeing that "a partition by licitation be made of the property mentioned in plaintiff's petition and described in the inventory of the property taken by C. V. Thibaut, Recorder, to wit: " (describing the three tracts or parcels of land and the movables.) It was further decreed that "all of the above described property be sold by C. E. Girardey, auctioneer, of the City of New Orleans, after due compliance with the legal requirements and formalities, for one-third cash, the balance in equal instalments in notes secured by mortgage and vendor's lien upon the property sold, bearing eight per cent. per annum interest from date until paid, and payable at one, two and three years after date," etc. The judgment recites that the parties consent to this partition and sale.

The several tracts comprising the plantation are :

1st. A tract or plantation previously belonging to E. B. D. DeGruy, in the parish of Plaquemines, on the right bank of the Mississippi River, measuring twenty arpents front on the said river, ten of which have a depth of forty arpents, and ten a depth of eighty arpents, bounded on the upper side by lands of Bonaventure Bayhi, etc. On this tract (first) are the residence, sugar house, machinery, cabins, stables and other improvements.

2d. A tract of ten arpents front, with a depth of eighty lying immediately below and adjoining the first tract or DeGruy plantation.

3d. Another tract with a front of nine arpents and a fraction and a depth of eighty arpents, lying immediately below and adjoining the tract last mentioned (second). There are no buildings and improvements on the second and third tracts.

Joachim Borde acquired his one-eighth interest in these properties by purchase from John W. Erskine, one of the heirs of Wm. Erskine, and in his petition for a partition he alleges his ownership of an undivided eighth of a certain sugar plantation, known as the Alliance Plantation, with buildings and appurtenances thereof and stock thereon, situated in the parish of Plaquemines, etc., measuring twenty arpents front on the Mississippi. He then alleges his ownership of one undivided eighth interest in the two other tracts, separately describing them. As we have before stated, the three tracts and the movables are appraised in block, although they are separately described in the inventory.

There existed upon the properties described the following mortgages:

The undivided eighth of Mrs. Erskine was incumbered, as to all the tracts, with a tacit and legal mortgage against her as natural tutrix of her two minor children, duly recorded.

The undivided fourths, each of George Urquhart and his wife were incumbered as follows: By a mortgage on the tract or plantation first above described, recorded March 9th, 1874, securing four promissory notes of $3000 each (marked No. 1), and two promissory notes, one of $3000, and one of $2500, these last two marked No. 2, all dated 24th February, 1874, and payable eleven months after date, in favor of L. F. G. Generes; this mortgage affects the first and second tracts described to the extent of said mortgagors' interests, and contained the pact of non-alienation and a stipulation that, in default of payment, the mortgaged property may be sold for cash, without benefit of appraisement. Of the notes of series No. 1, three are held by H. S. Buckner, and one by the Louisiana Savings Institution. The notes of the second series, amounting to $5500, are held by Mrs. Rosa Cammack.

The undivided fourth of George Urquhart in the tracts first and second is further incumbered by a mortgage, recorded on 16th March, 1876, in favor of Felix Labatut, to secure the payment of two notes of $2000 each, dated March 29th, 1871, payable nine months after date. These two notes are held by the New Orleans Insurance Company.

The undivided fourth of George Urquhart in the third tract is incumbered by a mortgage, recorded April 11th, 1876, to secure a note of $3719 40, dated March 31st, 1876, payable 1st December, 1876. This note is held by R. Beltram.

To recapitulate briefly, the condition of the properties as to owner-ship and incumbrances was as follows: three undivided eighths of the three tracts, owned respectively by Borde and the two minors Erskine, unincumbered; one undivided eighth, owned by Mrs. Erskine, incumbered as to all three tracts by a legal mortgage in favor of her minor children; one undivided fourth, owned by Mrs. Urquhart, incumbered as to the first tract by concurrent mortgages held by H. S. Buckner and the Louisiana Savings Institution, and as to the second tract by a mortgage held by Mrs. R. Cammack; and one undivided fourth, owned by George Urquhart, incumbered as to the first tract by concurrent mortgages held by H. S. Buckner and the Louisiana Savings Institution, as to the second tract by a mortgage held by Mrs. R. Cammack, as to both the first and second tracts by a mortgage held by the New Orleans Insurance Company, and as to the third tract by a mortgage held by R. Beltram.

The property being thus incumbered by this complicated congeries of mortgages, affecting one, an undivided interest in all three tracts, one an undivided interest in two of the tracts, and others an undivided

interest in separate tracts only—all three tracts were sold in block for a lump sum, and rule taken on the mortgagees to show cause why—in order to consummate the partition among the joint owners of the land— their mortgages should not be erased, reserving to them the right to participate with the owners in the partition of the lump sum for which the lands were bid off in block.

The defendant in rule, appellee herein, in his answer to the rule, after setting forth his ownership of the mortgage notes, given as above mentioned by Urquhart and wife, and the terms and stipulations of the mortgage securing the same, alleges that the first tract described, the undivided half of which was specially mortgaged to secure the notes described, constitutes a portion of the "Alliance" sugar plantation, referred to in the rule; that the said plantation, as a whole, consists of three parcels or tracts of land as before mentioned and described; that the first tract is the one of which one-half is mortgaged as stated; that all the buildings, improvements, etc., upon said plantation are upon said tract, and there are no improvements on the other tracts; that the portion affected by his mortgage is relatively of much greater value than the other portions thereof; "that the judgment under which the pretended sale was made, directed each of the said three tracts of land to be sold as a distinct property; that upon its face the judgment under which the pretended sale is alleged to have been made, purports to be a consent decree between the parties interested in the ownership of the entire plantation, made up as aforesaid of the tract affected by the mortgage, upon which were all the buildings, improvements, etc., and of the other two tracts upon which there were no buildings whatever. That the sale referred to was not made in conformity with the judgment directing the sale in three separate parcels as aforesaid, but after being subdivided into lots of fifty acres and less, was not sold in such lots, but one of said lots was first put up by the auctioneer to be bid for at so much an acre, the bidder to have the option of taking the whole plantation at the price bid per acre on the first lot, and, accordingly, J. A. Fernandez, for his wife, having bid $8 75 per acre on that lot, the whole plantation in block, containing the three distinct tracts above described, was adjudicated to her for the price of $20,650 26." "That, as one who was no party to said partition proceedings, but whose interests are directly affected thereby, he has the right to aver and prove the truth with regard to said pretended sale, though it should contradict the proces verbal of the auctioneer. He pleads as a matter of law, that the sale of property, had to effect a partition among owners, where the sale is not a probate sale, does not entitle the purchaser to have the mortgages previously granted by the co-owners upon their respective interests released, but, that the property can only be sold subject

-to such mortgages, especially when such sales are made by consent of parties, whether in' or out of court; and that, in this case, the pretended sale was made in disobedience of the express requirements of the judgment ordering the sale, and of the Constitution and laws of the State, with reference to subdivisions into lots of fifty acres or less, and is, therefore, void; that the act of mortgage, securing his notes, contains the pact *de non alienando*, which precluded his mortgagors from con- senting to any alienation of the property for the purpose of partition or any other purpose to the prejudice of his mortgage, and that such consent cannot defeat his mortgage rights. That it does not appear that experts were appointed by the court to determine whether or not the property was susceptible of partition in kind.

The issues thus raised and questions presented for consideration and decision, are dependent, first, upon a decision of the legality and validity of the sale. If the sale was not made in conformity with the requirements of the law, can the defendants in the rule urge the nullity and have it declared void and of no effect. A rule was taken against the mortgagees requiring them to show cause why their mortgages should not be cancelled. Why cancelled? Because, as alleged, the effect of the sale at which the purchaser claims to have acquired the property, operates to cut off all pre-existing mortgages. What cause could be more conclusive and potent to defeat such effect than that the sale under which the purchaser claims to exercise the right, is not a valid one, is indeed no sale at all? The right of the mortgagee to raise this question in his own defense, and as an assertion of his mortgage rights, and to show that they are unaffected by the proceedings on which purchaser relies, is plain to our minds. The joinder of issue practically involves, from the standpoint assumed by the plaintiff in rule, the question whether or not there was a legal, valid sale, binding upon all parties interested, in its effect and operation. It is not disputed that the sale was made subject to the requirements of the Constitution of 1868 and the law in force at the time. It is, however, denied, that those requirements were fulfilled or complied with, and if such is the case, the sale cannot have the effect claimed for it, so far as the mortgages resting upon the property in favor of appellee are concerned.

Article 132 of the Constitution of 1868 declares: "All lands sold in pursuance of decrees of courts shall be divided into tracts of from ten to fifty acres." Here, the lands sold were *divided* into such tracts, but it is certain they were not sold by lots. Act No. 40 of 1869, entitled "An act to provide for carrying into effect the one hundred and thirty-second article of the Constitution of the State," in the third section provides, "that whenever a sale of land is to be made by decree of court, or otherwise than is specified in the first section of this act (which relates

to sales under an execution or writ of seizure and sale), then the *parties in interest*, etc., shall cause the tract or tracts· of land about to be sold to be divided and plots made of the same in lots of from ten to fifty acres each, for the purpose of the sale." * * * "Such officer shall sell the said lots separately." These constitutional and legislative requirements are to our mind mandatory. The evidence shows conclusively that the lots were not sold separately; on the contrary, although *divided* into lots as required by law, these lots were not offered and sold *separately*. One lot was offered separately, and in the offer of that by the auctioneer was the announcement that the purchaser thereof should have the privilege of having all the other lots adjudicated to him on the same terms and at the same price as the first lot. There was, then, no sale of the lots *separately*. The remaining forty-eight lots, and all the movables were really sold and adjudicated in block. *Non constat*, that, if offered separately they would not have brought a higher price. At any rate, the sale was not made in accordance with the then existing law, and we cannot maintain its validity; and if the sale was not valid, it does not cut off the rights of the mortgagees.

Under this view of the case, we do not think it necessary to pass upon the other questions raised. They may become, under subsequent proceedings between parties in interest, the subject of adjudication, and these parties are all free to assert such rights and claims as they have.

It is not for us to decide upon the·policy or impolicy of the provisions of the organic or statutory law, or to be influenced by mere considerations of convenience or inconvenience. We are only called upon to construe the law according to its intent and meaning and apply it to the facts as they appear from the record.

The judgment appealed from is affirmed at costs of Mrs. Fernandez, appellant, in both courts.

Rehearing refused.

The Chief Justice recuses himself in this case, having been of counsel.