No. 12,808.

Mrs. M. E. Cockerham vs. M. H. Bosley, et al.

52   65
104   246

52   65
107   580
107   652

### Syllabus.

#### On Motion to Dismiss.

1. All motions to dismiss appeals are not required to be made within three days.
2. There are motions to dismiss which may be filed any time prior to appearance or answer.
3. Of the latter class are those where the proper parties are not before the court, or where the appellant has acquiesced in the judgment, or where there has been no citation of appeal.
4. An appeal will not be dismissed on account of failure to cite the appellee where the petition for appeal asks for citation and it is ordered, and the want of it is not imputable to appellant.
5. In such case the court will grant a reasonable time to make proper parties by citation.

#### On the Merits.    (Miller, J.)

(1) The surviving partner of a commercial partnership will not be deemed an intermeddler because on the dissolution of the partnership by the death of one of the partners, the survivor collects debts due the partnership, and because he makes sales of its property.
(2) But the surviving partner will be held to a faithful account for all debts of the partnership collected and for all proceeds of such sale.
(3) The surviving partner of the partnership will not be relieved of his liability for the partnership property sold by him in block for less than its value, on the ground urged by him that with the proceeds of the sale he was enabled to compromise the partnership debts.

#### On Rehearing.    (Blanchard, J.)

1. Where a liquidator disburses money for account of the partnership he represents he should, in accounting, present an itemized statement of the expenditures showing *how, when, to whom,* and *for what* paid out, present the vouchers therefor, and if there are no vouchers, make due proof of the payments. as well as the necessity therefor.
2. Each item of disbursement should be specifically proven.
3. And the account should be so made out as to be susceptible of easy understanding by those who have to deal with the same and who are not professional book-keepers, or expert accountants; and where it is not, the case will be remanded at the expense personally of the liquidator.
4. The members of the Bench are not supposed to be expert book-keepers and accountants.
5. The practice of appointing auditors and experts in matters of complicated accounts is favored.

APPEAL from the Ninth Judicial District Court for the Parish of Red River.—*Hall, J.*

*Elam & Egan* for Plaintiff and Appellant.

*William Goss* (*John I. Teer,* of counsel), for Defendant and Appellee.

The opinion of the court on the motion to dismiss was delivered by BLANCHARD, J.

On the merits, the opinion was delivered by MILLER, J.

On the rehearing, the opinion was delivered by BLANCHARD, J.

### ON MOTION TO DISMISS APPEAL.

The opinion of the court was delivered by

BLANCHARD, J. Defendants, appellees, move to dismiss this appeal on the ground that no notice or citation of appeal has been served on them.

Appellant replies that the motion was not seasonably presented because filed more than three days *after* the filing of the transcript, and urges that a motion to dismiss an appeal must, in all cases, be made within three days of the filing of the transcript.

The transcript was filed April 11th, 1898; the motion to dismiss on May 16th, 1898.

But it is a mistake that all motions to dismiss are required to be made within three days.

There *are* motions to dismiss that may be filed any time prior to appearance or answer. For instance, in cases where the proper parties are not before the court, or where the appellant has acquiesced in the judgment. Francis vs. Lavine, 26 La. Ann. 311; Evans & Taylor vs. Succession of Etheridge, 29 La. Ann. 576; James vs. Followes, 23 La. Ann. 37.

And where there has been no citation of appeal it would be impossible to hold appellee to the rule of filing motions to dismiss within three days. He is not before the appellate court at all until cited or given notice of appeal as provided by law. He is not supposed to

know there is an apppeal until .cited, or ·given notice by the taking of the appeal in open .court at the session of court whereat the judgment was rendered. But if he should happen to become apprised in some other way that an appeal had been petitioned for, an order ·granted· and the transcript filed in the appellate court, he may· at. any time appear and move its dismissal for want of notice, or citation, where the .appearance is for that sole purpose.

It is such a motion as this that is now before us—one predicated upon want of notice, or citation.

The judgment herein was rendered on August 14th, 1897.. On January 6th, following, plaintiff petitioned for a devolutive appeal and an order therefor was granted returnable to this court on the second Monday of April, 1898. Citation of appeal to appellees to answer the appeal was asked and ordered, and we find in the record what purport to be citations, addressed to each of defendants, but no return of service whatever thereon.

It appears to be a fact that there was no service.

Besides, the citations referred to notify the appellees to appear in the office of the clerk of the Ninth District Court, Parish of Red River, in the town of Coushatta, and file their answer to the demand of the petition within ten days, whereas Act No. 6 of the Acts of 1896, amending and re-enacting Article 583 of the Code of Practice, requires the appellee to be cited to appear before the court of appeal at its next term or return day for the parish, if there be sufficient time for doing so after allowing a delay of *fifteen days* from date of service of citation, or from the date of adjournment of the court when the appeal has been granted in open court.

Appellees insisting upon their objection of want of citation and not waiving same by subsequent appearance or answer, the court must take action thereon. But it is well settled that an appeal will not be dismissed because of irregularity in the citation of appeal and return thereon when citation has been prayed for, nor because of insufficient service of citation of appeal not attributable to the appellant, nor because of failure of the clerk to issue proper citation when asked for, or the sheriff to serve when issued. Phillips vs. Creditors, 37 La. Ann. 701; Murphy vs. Ins. Co., 33 La. Ann. 454; Borde vs. Erskine, 33 La. Ann. 873; Succession of Townsend, 36 La. Ann. 447.

Indeed the matter is settled by the statute law itself. Section 36 of the Revised Statutes declares that "no·appeal·to the Supreme

Court shall be dismissed on account of any defect, error, or irregularity * * * in the citation of appeal or service thereof * * * whenever it shall not appear that such defect, error, or irregularity is imputed to the appellant, but in all (such) cases the court shall grant a reasonable time to correct such errors or irregularities."

It is, therefore, ordered, adjudged and decreed that the motion to dismiss be denied, and that this case be continued until the next term of this court with directions to the appellant meanwhile to cause proper citation of appeal to issue to and be served upon the appellees.

ON THE MERITS.

MILLER, J. The plaintiff appeals from judgment on her demand for the liquidation of a commercial partnership, and to recover the amounts she claims will be found due her on that liquidation by the defendants, one of whom is her co-partner, and the other the widow of the deceased partner and the tutrix of her minor children.

The partnership organized in December, 1893, composed of plaintiff, the defendant, Milton H. Bosley, and John H. Scheen, plaintiff contributing as her share of the capital two thousand dollars, Scheen & Bosley agreeing to contribute one thousand dollars each, was dissolved by the death of Scheen in December, 1895. The plaintiff and Bosley contributed their portions of the capital, and it is claimed that the portion of John H. Scheen was represented by a note for one thousand dollars used by the firm, but it is shown that the note was the paraphernal property of the plaintiff, which she alleges was placed in the firm's safe to be kept for her, and was appropriated wrongfully for the firm's purposes and the amount of that note is part of her present demand. At the dissolution of the firm in December, 1895, there were book accounts, other assets due the firm and its stock of merchandise. The plaintiff contends the stock was worth three thousand five hundred and forty-seven dollars, and there is in the record an estimate placing the stock at that value, made by or under the direction of Bosley. He continued the business after Scheen's death, and was appointed liquidator on the 11th of January, 1896. It is shown that Bosley, from Scheen's death to the date of his appointment as liquidator, sold merchandise of the partnership to the amount of nine hundred and seventy-eight dollars, and on the 11th

of February, 1896, sold the residue of the merchandise to L. E. Scheen, and it appears that Bosley was engaged with L. E. Scheen in his business. On this branch of the case the plaintiff claims Bosley should be charged with the sales from Scheeen's death to the sale of the residue of the merchandise. to L. E. Scheen, nine hundred and seventy-eight 70-100 dollars, less a credit of one hundred and thirty-nine 22-100 dollars; that the liquidator should be charged also with the value of the stock, three thousand five hundred and forty-seven dollars, less the amount of these sales, one hundred and thirty-nine 20-100 dollars, and less also fifteen hundred dollars, proceeds of sale of the residue to L. E. Scheen. On another branch of this case, it is shown that in December, 1895, there was remitted to Bosley by Hardie & Co. the sum of one thousand dollars, and plaintiff claims Bosley should be charged with these remittances.

A previous suit brought by plaintiff for the liquidation of the partnership, was dismissed on the exception of prematurity, *i. e.*, that the Code allows one year to the liquidator to settle the partnership dissolved by death of his co-partner. This suit followed, and though the petition is broader in its allegations, the controversy placed before us relates to the asserted liability of Bosley for the note belonging to plaintiff of one thousand dollars, his liability for the stock of merchandise on the basis of three thousand five hundred and forty-seven dollars, and the amount of the remittances by Hardie & Co., and plaintiff's demand is that he should be charged accordingly. The defendant excepted that the petition united distinct causes of action, directed, we presume, against the allegation of Bosley's liability as liquidator and his personal liability for the note of one thousand dollars arising from his alleged participation in the asserted fraudulent use of the note by the partnership. Subject to the exception, the defendant pleaded the general issue, with the averments that the one thousand dollar note had been transferred to John H. Scheen, by him was furnished to the partnership as the capital he was to furnish; that the stock on hand on the 16th of February, 1896, was sold for fifteen hundred dollars, by means whereof the defendant, Bosley, was enabled to compromise the firm's debts at 66 2-3 cents on the dollar; that the liquidator had paid out of his own funds one thousand three hundred and twenty-eight dollars, for which he claims judgment, and that the accounts of the partners be liquidated. Subsequently, the liquidator filed his account, showing the assets of the

firm, the debts paid by him, and the amount due him of one 'thousand
three hundred and twenty-eight dollars. The petition of the plaintiff
was ordered to stand as an opposition to the account, and 'the result
of the litigation was a judgment directing that 'the liquidator be
debited and credited 'with sundry amounts omitted in his 'account,
rejecting the demand that he be charged with the estimated value of
the stock; and rejecting also the demand that he be charged with the
money remitted by Hardie & Co. The judgment maintains, as against
the partnership, the plaintiff's demand for the amount of the note of
one thousand dollars, but not as to the individual obligation of
Bosley. He is ranked as a creditor for seven hundred and eighty-nine
dollars to be paid before any dividends are paid; the Succession of
John H. Scheen is decreed to be indebted to the partnership in the
amount of nine hundred and seventy-one dollars; the account filed
by the liquidator, thus amended, is. homologated, and, in other
respects, the plaintiff's opposition is dismissed. In this court, the
defendant, answering the appeal, asks that the judgment be amended
so as to decree that the seven hundred and eight-nine dollars, awarded
him, be paid by preference, especially over the one thousand dollars
awarded the plaintiff.

It is contended on behalf of the defendant that the husband of
plaintiff had agreed, or, at least, was expected to furnish on behalf of
John Scheen, his portion of the capital of the partnership; or as we
understand, that plaintiff's husband being indebted to Scheen, trans-
ferred to him the note of one thousand dollars for the uses of the
partnership, and that Scheen being credited with the amount of the
note on the capital account, the partnership stands before us as the
holders for value of the note. It is distinctly testified the note, the
property of plaintiff, was entrusted to Scheen for safe keeping, and
we think the current of the whole testimony is that neither the
husband and still less the wife ever transferred the note or con-
sented to its use by the firm. Nor can we appreciate that because of
the credit given Scheen on the books of the partnership, the partner-
ship is to be deemed the holders of the note for value in any sense
that defeats the right of the plaintiff. She was no party to that
credit, nor was her husband even, if he could have thus disposed of
his wife's property. It is claimed that the use of the note by the firm
was a fraud on the plaintiff, committed by Scheen and by Bosley, and
in that view the plaintiff is entitled to judgment against Bosley indi-

vidually. The plaintiff is the sister of Scheen, and Bosley is her
brother-in-law. It is argued that this relationship authorizes the
conclusion that Bosley is to be charged with knowledge that the note
was improperly used, and, hence, with participation in the alleged
fraud. It is testified by him that he did not know the note belonged
to plaintiff. There is in the record testimony of the communications
by Scheen to Bosley, well calculated to leave on his mind the impres-
sion that plaintiff, the sister of Scheen, interested in his welfare,
would not object to his temporary use of the note in promoting the
business of the partnership. There is in the record a writing from
Scheen to the effect the partnership should have no liability arising
from his use of the note for its purposes. The note was about the
amount Scheen was to furnish to the firm, and Scheen's view seems to
have been to use the note temporarily, as the substitute for the cash he
was to furnish. It is in proof that Scheen pledged the note for the
firm's debt, we think with the expectation of being able to redeem it,
but the expectation failed. In this condition the note was discounted
by the maker, and with the funds thus obtained the note was relieved
from pledge, the firm's debt paid, the note discharged and returned
to the maker. Bosley conducted the negotiation resulting in the
discount of the note, but the discount was the sequel of pledging the
note which was the act of Scheen. We can not find the basis to
charge Bosley with fraud and, on that basis, hold him liable, but as
the note of plaintiff was used by the firm, there was the firm's obliga-
tion and the liability of each of the partners, incident to all com-
mercial partners, and this was the view of the court, the judgment
properly directing that the amount be paid before any distribution
of dividends or payment to partners.

We think it is manifest from the record, then, the remittances of
Hardee & Co. were not for any debt to the firm, but for the purchase
of cotton. The remittances would have produced debts of the firm,
but seem to have been paid from the proceeds of the cotton. We
find no basis to charge Bosley with these remittances.

The argument on behalf of the plaintiff treats the defendant,
Bosley, as an intermeddler with the property of the partnership, and
urges that as such he should be held liable for its assets because,
after Scheen's death, in December, 1895, Bosley continued the busi-
ness, not having been appointed liquidator until February —, 1896.
The surviving partner can not, in our view, be deemed an intermed-

dler with respect to the partnership property. It is his duty and his right, when the death of his co-partner occurs, to contribute his efforts to realize the assets of the firm, pay its debts, and do such other acts as are requisite to wind up the business of the firm. To that end the Code authorizes his appointment as liquidator, but, in our view, he is not to be held as an intermeddler merely because before that appointment he has collected assets and made payments of the debts of the firm. Story, on Partnership, Sec. 486, Civil Code Articles 1102, 1103, *et seq.* But it is equally clear the surviving partner is bound to faithfully account for all the property of the partnership when, at its dissolution, he takes charge of it, and it is no less his duty to keep and furnish when required proper accounts of his administration of the partnership. The account, such as it is, we find in the record is headed: "Bosley, liquidator, in account with Scheen & Bosley," supplemented by the account of John T. Hardie & Co. with that firm. The first named account begins 1st of January, 1896, and from an examination, we reach the conclusion that neither the amounts received by him from Scheen's death to the 1st of January, 1896, nor the disposition made of such amounts finds any place on that account, beyond one of the debits "to balance $139.00," which in Bosley's testimony is stated to have remained on 1st of January, 1896. It is true we find in his testimony that the amounts received by him prior to that date were applied in the business of the partnership; we have the reference to a diary and cash book, and to pages in the record, which furnish us no aid on this point. We find nothing in the record that conveys the explanation of the application of the amounts received prior to the 1st of January. They should be debited to him in the account he should have filed, and was ordered to file; the items of his expenditure for the partnership, whether in payment of its debts, or for its other purposes, should have been stated on the credit side of his account and under the very explicit issues in the controversy, one specially directed to the amounts he received prior to the 1st of January, 1896, he should have supported these debits and credits by proof. We find no such accounting or proof. We have paused on this branch of the case, reluctant to charge the liquidator with the December sales in view of his general statement the amounts were applied for the partnership, not at all the equivalent of that account that should have been filed or proof of items that the law exacts. In our view, as the record is placed before us,

the liquidator is to be charged with these sales claimed to have amounted to nine hundred and eighty-seven dollars, and sustained in our view by the testimony, and the credit of one hundred and thirty-nine dollars deducted leaves eight hundred and forty-eight dollars for which he is chargeable. We find the stock of goods estimated a few days after the death of Scheen at three thousand five hundred and forty-seven dollars. The estimate was made by the direction of the defendant, Bosley. It is offered to charge him with the amount it shows. If incorrect the burden was on him to show the real value of the stock, but without contrary proof we must take that estimate as our guide. Deducting nine hundred and eighty-seven dollars from three thousand five hundred and forty-seven dollars leaves the stock at two thousand five hundred and sixty dollars, and for this residue the defendant proposes to charge himself with fifteen hundred dollars, the price derived by him from the sale in block to L. E. Scheen. It is claimed that the husband of the plaintiff desired to become the purchaser of the stock, was consulted with reference to the sale, and consented to it. His testimony is to the contrary, at least to the extent that he gave no consent. It is further claimed that the defendant, Bosley, negotiated a compromise with the firm's creditors, thereby reducing the debts fully one-third, and the compromise depended on the quick realization of the cash requisite to be effected only by the sale to L. E. Scheen. It is argued that if the goods sold for less than their value, the deficiency was fully compensated by the reduction of the firm's debts, the result of the compromise. The sale of the stock of goods in the ordinary course of business is, at least, the general rule for the liquidating partner. When he departs from that course and proposes to account for goods valued at twenty-five hundred dollars by two-fifths less, in our view, he can not escape liability by urging the sale in block for fifteen hundred dollars was to make a compromise with the creditors accomplishing a reduction of their debts. The proof shows the compromise was effected, and that the creditors insisted on its consummation within a final period of thirty days. But for all of that we can not hold that a liquidator, charged with accountability for property in his hands, can discharge himself from liability for disposing of the property for less than its value by a compromise with a creditor effected with the cash he obtains, but what we must hold a sacrifice of the property. We are not prepared to establish that method as a guide for liquidators. In

our view the liquidator is to be charged with twenty-five hundred and sixty dollars, the value of the stock disposed of for fifteen hundred dollars.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be amended so as to charge the liquidator with the amount of the sales prior to January 1st, 1896, eight hundred and forty-eight dollars ($848.00), with the stock at $2560, less $1500, and that in other respects the judgment be affirmed with costs.

## On Rehearing.

BLANCHARD, J. A careful re-examination of this case, made at leisure during the summer vacation of the court, has served to convince us that the judgment of the court below is in the main correct. Its view of the controversy, we now see, is more accurate, more nearly in accord with the disclosures of the record, than that expressed in our former opinion, although, as to certain of its features, we find it necessary to remand the case.

Jno. H. Scheen, H. M. Bosley and M. A. Cockerham, agent (representing his wife who is separate in property) constituted the commercial partnership of Scheen & Bosley. Cockerham, agent, was the silent partner. He put $2000 of capital into the concern, and the other partners put, or were to put, in $1000 each. Notwithstanding this disproportion, they were to share equally in the profits of the enterprise. The reason for this was that Scheen and Bosley were to contribute their services to the business and attend to its management.

The partnership had continued for about two years when, on December 5th, 1895, Jno. H. Scheen died. This was in the midst of the business season, the time when the sale of goods was most active, when cotton was being marketed, and when collections of outstanding accounts were being made.

The partnership was dissolved by the death of Scheen, but to close the doors of the business house at that season meant great loss to owners and creditors alike. And so, by the consent of the surviving partners and the representative of the dead one, and with the acquiescence of the creditors, the business kept right on under the management and control of M. H. Bosley, who was advised with and consulted constantly by Cockerham, agent—he being present in the town and in the store off and on every day.

This continued until January 16th, forty-two days after the death of Jno. H. Scheen, when, by the written consent of Cockerham, agent, and that of the widow of the deceased partner, M. H. Bosley was appointed liquidator. He qualified as such and continued to conduct the business in that capacity, collecting its assets, disposing of its goods, paying its debts and seeking to wind up and terminate its affairs.

The concern was insolvent, but not greatly so. Its largest creditor was Wm. T. Hardie & Co., commission merchants of New Orleans, but this claim was secured by the pledge of sufficient cotton to about cover it.

Unsecured creditors for six or seven thousand dollars were induced to accept 50 per cent. of their claims cash, and 16 2-3 per cent. in twelve months time. Some of the smaller creditors were paid a larger percentage, and a few were settled with in full.

The net result of the effort at compromising the indebtedness was a saving to the firm of Scheen & Bosley, in liquidation, of about $1900.

The creditors who had agreed to the offer of compromise stipulated that the cash payments of 50 per cent. must be made in thirty days. To obtain the funds to meet these payments, it was necessary to make quick collection of assets and sales of goods. The creditors authorized the disposition at *private* sale of the goods and assets.

The liquidator kept the store open and sold off the goods as rapidly as possible. This continued until about the middle of February, when he sold the remnant stock remaining *in globo* to L. E. Scheen for $1500.

The cotton in the hands of Hardie & Co. was gradually sold by them and a settlement of accounts with that firm shows a balance of $127.00 in their favor.

The closing out of the stock of goods and cotton left in the hands of the liquidator, at the time he filed the account under consideration, notes and accounts due the partnership of the face value of $4,120.00, and real estate valued at $1000. He stated in the petition accompanying the account that a large per cent. of the notes and other assets, he had reason to believe, could be collected the ensuing year. The account was not a final one, and the liquidation is not ended.

The present suit is one to settle the affairs of this partnership as between the partners themselves. No creditor is concerned herewith.

The plaintiff sued for an accounting by the liquidator, and she now opposes in numerous particulars the account he filed.

One of her principal contentions is that the liquidator had no warrant or right to dispose of the remaining stock of goods to L. E. Scheen at private sale for $1500, and that he should be charged in his settlement with their full value, which is averred to have been $2500.

With reference to this transaction, the district judge says: "The sale was made after much discussion and deliberation, with the full knowledge of plaintiff's husband and agent, who had acted for her in everything, and without a word or murmur of opposition from either. It was made to raise the money necessary to effect a compromise of the debts at 66 2-3 cents, with the written consent of the creditors whose assent to the compromise depended upon the cash payment in thirty days of 50 cents in cash on the dollar. And this cash could only be realized by making this sale. By making it and thus effecting the compromise, about $1900 were saved, or about one-third of the indebtedness of the firm, exclusive of the Hardie account which was secured by cotton pledged."

This is a fair statement of the case, and to it we will only add that the plaintiff, through her husband and agent, not only was consulted and advised with about the sale, without opposing it, but she requested to be allowed to take the goods herself at private purchase for fifteen hundred dollars and was given the refusal of them at that price.

The evidence satisfies us that a reasonable time was given her, or her agent, to raise the money and take them, and it was only after it became apparent she would not, or could not effect the purchase that the sale was made to E. L. Scheen. There was no opposition to the sale of the goods in this way, no protest; and plaintiff, as a member of the firm of Scheen & Bosley, having benefitted by the compromise made with the creditors, of which the rapid disposition of the assets of the partnership in order to raise funds was a constituent part, can not now be heard to contest the sale of the goods and to hold the liquidator responsible for an alleged value thereof over and above the fifteen hundred dollars realized.

Another contention of plaintiff is that the defendant, Bosley, without right or authority used a $1000 mortgage note belonging to her. With reference to this the district judge says: "It (the note) seems to have been entrusted by her to her husband and that he, without

her consent, authorized J. H. Scheen to use it in making up his part of the capital stock. It was during the year 1895 pledged to Jos. Bowling Company, Limited, to secure a debt of $800, and about the time of the death of Scheen it was offered to the maker for $800, which he accepted and the Bowling debt was thereby paid. This was done by Bosley during the illness of Scheen. While the note was made payable to the maker, and by him endorsed, and Mrs. Cockerham's name did not appear on it, still I am inclined to think that Bosley should be charged with knowledge that it belonged to her. But whether he knew it or not, it did belong to her in fact, and the firm had no right to use it without her consent, and having done so it is responsible to her for its full amount of one thousand dollars, with 8 per cent. interest from December, 1893. Her demand for a personal judgment against Bosley for the amount can not be allowed. The note was not used to pay his separate debts, but to pay a debt of the firm for which she, with other members, was equally bound. The effect of this finding is to debit J. H. Scheen with the amount placed to his credit as the proceeds of the note, $800."

The facts disclosed by the record with reference to this note and its use in the business of the firm fully warrant this ruling, and the law governing and guaranteeing the rights of this married woman, under the circumstances disclosed, has found its proper application therein. Nor do we think that this is a case where C. C. 2324, which provides that he who assists or encourages in the commission of an unlawful act is answerable *in solido* with the other party to the offending for the damages caused by the act, applies. . The act by which this note was used in the partnership was that of J. H. Scheen, and he left a written statement signed by himself to this effect. But the partnership benefitted by its use, and since it is not shown that Scheen had the right in fact, or in law, to so use it, it follows that the partnership, which, through Scheen, used the note, must return it or account for its full value to the owner. It quite suffices, therefore, that the partnership be charged with its reimbursement.

Bosley, while conducting the business after the death of Scheen, and before his appointment as liquidator, collected a considerable amount of money representing the cash sales of goods, and, in addition, drew $1000 in cash from Hardie & Co.

The account he has filed herein does not make a sufficiently full and satisfactory showing of what he did with this money. If he dis-

bursed it for account of the partnership he should present an itemized statement of the expenditures showing how, when, to whom, and for what paid out, present the vouchers therefor, and if there are no vouchers make due proof of the payments, as well as the neceessity for the same. Each item of disbursement should be, if possible, specifically proven. And the account should be so made out as to be susceptible of easy understanding by those who have to deal with the same, and who are not professional book-keepers, or experts, in the matter of commercial accounting. The members of the Bench are not supposed to be skilled book-keepers, or experts, in the understanding of accounts.

If need be auditors and experts should be appointed to make these matters clear to the court, and the Code of Practice provides for the appointment of such. The practice of appointing auditors and experts is favored in cases like the present one.

The liquidator attempts to eke out his account in the particulars we have mentioned by filing as exhibits certain pages of his cash book for December, 1895, and certain pages of what he calls "the liquidator's book." But these are confused accounts, without dates, leaving much to be supposed, understood and guessed at. Skilled accountants might perhaps understand the same and arrive at the results they are supposed to disclose, or be able to point out wherein they are lacking in results they should disclose. We decline to essay the difficult and doubtful task, and will reverse the judgment appealed from on this branch of the case, and remand it at the liquidator's personal expense, with directions to present such an account of his disbursements of cash received as will permit a proper understanding of the same to be easily arrived at.

It will not do to say that Bosley is accounting in this litigation merely as liquidator and that, therefore, he is concerned herein only with the cash balance on hand at the time of his appointment as liquidator. By consent of those interested, he conducted the business for over forty days before he was appointed liquidator, and it is as much his duty to make a full and complete showing of receipts and disbursements while acting without the sanction of a formal appointment as liquidator as it is of receipts and disbursements since such appointment. As we have seen, the suit is one to settle the affairs of the partnership as between the partners.

For the reasons assigned, it is ordered that the decree of this court

hereinbefore handed down be set aside, and it is now adjudged and decreed that the judgment appealed from, in so far as it sustains the sale of the remnant of stock of goods to L. E. Scheen for fifteen hundred dollars, and in so far as it holds the partnership responsible to the plaintiff herein for the $1000 mortgage note, and directs that the amount of same with interest be paid to her before any dividend is declared, and in so far as it adjusts among the partners their separate accounts, and in so far as it debits the liquidator with certain items aggregating $539.07, mentioned in the opinion of the court, and debits and credits him with certain other items mentioned in the opinion, and in so far as it decrees the estate of J. H. Scheen to be indebted unto the partnership in the sum of $800, and the further sum of $171.16, and in so far as it holds that the plaintiff did not put into the business fifty-five bales of cotton as she contends, but only forty bales, be and the same is affirmed.

It is further ordered, etc., that in all other respects the said judgment is annulled, avoided and reversed, and the case remanded with directions that M. H. Bosley and M. H. Bosley, liquidator, be ordered to file such an account in detail of his receipts and disbursements of cash as is described in the opinion of the court, any balance claimed by him as against the partnership, or the partners, on account of his personal funds used in settlement of the debts of the partnership, to await the final determination and settlement of his accounts as liquidator.

It is further ordered, etc., that the costs of the lower court be paid by the estate of Scheen & Bosley, in liquidation, those of this appeal by the liquidator personally.

MONROE, J., takes no part.