ST. PAUL, J.
 

 We annex a rough sketch of the lands involved in this controversy. It is not drawn to scale; to be so, the depth of the land from east to west should be double the front thereof from north to south. But, as it is, it is sufficiently clear for the purposes of the controversy. The particular matter inirolved is the title to tract I-I, being the western or, rear 40 acres of the lower or southernmost 9 arpents’ frontage on the river.
 

 
 *1101
 
 I.
 

 Plaintiffs, 10 in number, are the sole heirs of William Erskine and Ernestine Erskine, his wife. They bring this suit to annul certain confirmations of title given by them to defendant, and to be declared the owners of an undivided half of tract H on the above-mentioned sketch.
 

 To this petition defendant pleaded want of jxuisdiction in the district court of Plaque-mine parish, where the land is situated. As the suit relates exclusively to the title and ownership of immovable property, it was properly brought in the parish where the property was situated. C. P. art. 163; Thompson v. Calcasieu Tr. & Sav. Bank, 140 La. 264, 72 So. 958, and authorities there cited; Smart v. Bibbins, 109 La. 986,
 
 34 So. 49.
 

 Defendant also excepts that there is a misjoinder of parties plaintiffs, because the various confirmations were not in one act, but by separate acts, all executed at different times. The plea is not well founded. All the acts had but one purpose in view, and were all executed about the same time; the object of all parties is the same, to wit, to set aside those confirmatiohs and to be recognized as joint owners of one undivided half of the lands. “The test to be applied in considering a plea of misjoinder is whether the parties, plaintiffs or defendants, have a common interest in the subject-matter of the suit, * * * ” and “after all, the matter was •within the sound discretion of the trial judge.1' Reardon v. Dickinson, 156 La. 556, 100 So. 715, citing Gill v. City of Lake Charles, 119 La. 17, 43 So. 897, and other authorities.
 

 Another exception is that it is inconsistent on the part of the plaintiffs to urge both that their confirmation does not cover the land in controversy and that same was obtained for less than half the values of the land involved. To this it suffices to say that the confirmations are annexed to the pleadings, and taken in connection with the adjudication which they purport to confirm, they show that they do cover the land in controversy, and, as the documents speak for themselves and control the allegations of the petition (Bonura
 
 &
 
 Co. v. United Fruit Co., 162 La. 53, 110 So. 86), it follows that this objection to the petition falls of its own weight. For the rest, the other allegation, to wit, that the confirmations were obtained for less than half the values of the land involved, shows no cause of action, since the plea of lesion beyond moiety has no application to a sale or x-atification or confirmation relating to speculative interests and conjectural rights to immovables, but only the sale of immovables, where the right is clear and the possession undisputed. Fernandez v. Wilkinson, 158 La. 138, 103 So. 537. We will therefore give no further consideration to this part of the petition, the more so as there is nothing in the evidence to show that plaintiffs’ half interest in the land is worth more than the price received by them for the. confixunation. Cf. Fernandez v. Wilkinson, supra.
 

 The plea of estoppel merges into the merits of the case; if the confirmations aré valid, then plaintiffs are estopped by them; otherwise not.
 

 And the plea of no cause of action need not be considered, since it is leveled at the proposition that an action for rescission for lesion beyond moiety does not lie as to a sale by heirs of their .succession rights to a stranger; for, whether this contention be sound or unsound, as to which we express no opinion, we have none the less effectively disposed of plaintiffs’ proposition by holding above that the action for rescission on account of lesion beyond moiety does not lie at all in a case like this, where the rights sold are merely speculative and conjectural.
 

 II.
 

 Miss Gardiner, the defendant, derives her title from James Wilkinson, who had derived. his. title from Mrs. Carmen Lesseps.
 
 *1103
 
 Her first defense is that she has no need of the confirmation given her by the heirs of Erskine, as Mrs. Lesseps had already a good and valid title to the land.
 

 This is quite true, if Mrs. Lesseps acquired anything at all by the adjudication made to her by C. E. Gerardey, auctioneer, on June 24, 1876, in the partition suit brought by Joachim Borde v. Widow of Wm. Erskine, et al., “Mrs. J. A. (Carmen) Fernandez, a third person, appellant,” 33 La. Ann. 873; the said Joachim Borde being the assignee of John Erskine, one of the four universal legatees of William Erskine, the other three universal legatees (of the one undivided half belonging to William Erskine) being his wife, Ernestine Erskiné, and -his two other children, Mary Erskine and Clementine Erskine; and the other undivided half thereof belonging in equal shares to George Urquhart and his wife, Mrs. George Urquhart.
 

 The way in which said parties came to be' the owners of said land was as follows:
 

 William Erskine acquired from the Consolidated Bank, in 1842, a certain sugar plantation, about 20 arpents front on the river, having 40 arpents in depth for the upper 10 arpents and 80 arpents in depth for the lower 10 arpents, o.f which he afterwards sold an undivided half interest to George Urquhart (tracts A and B-C). George Urquhart thereafter (1847) bought the 10 arpents front, by 80 arpents in depth, next below the above-mentioned 10 arpents, of which he afterwards sold an undivided half interest to William Erskine (tract D-E). Again, George Urquhart bought another 10 arpents front, by 80 arpents in depth, next below the above-mentioned 10 arpents,' of which he again sold an undivided half interest to William Erskine. This last sale was executed May 11,1852. go that at that time all the above-described property belonged to William Erskine and George Urquhart in equal portions, to wit, an undivided half to each.
 

 In 1859 George Urquhart married Augustine Weyler, and by his marriage contract with her he donated to her an undivided half
 
 of his undi/oi&ed, half
 
 in all the above-described property.
 

 In 1866 William Erskine died, leaving a will by .which he instituted as his universal legatees his wife, Ernestine Erskine, and his three children, John Erskine, Mary Erskine, and Clementine Erskine.
 

 On January 23, 1867, John Erskine, then over 18 years of age, was duly emancipated, and on the same day the said John Erskine and his mother, Mrs. Ernestine Erskine, and sisters, Mary Erskine and Clementine Erskine, "were duly put, “according to the requisites of the law and the provisions of the last will and testament of said William Erskine, in full possession of the property left by the deceased.”
 

 It is at this point that, through the negligence or carelessness of some one, an error occurred which has been a fruitful source of subsequent litigation, gee Fernandez v. Wilkinson, 158 La. 138, 103 So. 537, Erskine v. Gardiner, 162 Ra. 83, 110 So. 97, and the present suit. F'or, in the inventory of the succession of William Erskine, taken on the very day when John Erskine and his coheirs were sent into possession thereof, the tract last purchased, being the lower 9 arpents (tract F-H), was described as having only 40 arpents in depth. Tr. No. 6675, pp. 138, 141, 143; Borde v. Erskine, 33 La. Ann. 873. For either William Erskine had already disposed of the rear 40 arpents of said 9-arpent tract (in which case this case ends right here), exit was a mere clerical error to describe said tract as having only 40 arpents in depth, when in truth its depth was actually 80 arpents ; since the inventory purports to list
 
 all
 
 the property left by William Erskine when it declares that there is “no other property belonging to said deceased to be inventoried.”
 

 Also, in his will (Tr. No. 6675, p. 133), William Erskine has expressed a wish that his universal legatees “should continue in copart
 
 *1105
 
 nership to work
 
 the property,”
 
 and both in the petition for a family meeting called by •said Mrs. Ernestine Erskine (Tr. 6675, p. 157), and in the process verbal of said family meeting approving said wish (Tr. 6675, p. 164), the “main portion” of the estate of said deceased was declared to consist of “a certain sugar plantation named
 
 Alliance”
 
 and situated in the parish of Plaquemine; no other description of said plantation being given or necessary.
 

 Again, when Joachim Borde (who had acquired the one-eighth interest of John Erskine) sued- his co-o'wners for a partition of the land held in common,.the surveyor (D’Heme-court and Uneas Lewis) included in Belle Alliance plantation the whole of the three tracts of land, dividing it into 49 lots; and Girardey, the auctioneer, adjudicated the whole 49 lots to Mrs. Carmen Fernandez, the highest bidder, without protest or complaint from any source, except certain mortgage creditors, at whose instance the whole adjudication was annulled for failure to comply with the provisions of Const. 1868, art. 132, and Act 40 of 1869 (afterwards repealed), all of which will more fully appear by reference to the opinion of this court in Borde v. Erskine, 33 La. Ann. 873. And this court in the very statement of the case (page 876) found in 1876, as we do now, that the
 
 plantation
 
 consisted of all three tracts, all appraised in bloc, though separately described.
 

 Hence our conclusion is that, when John Erskine sold to Joachim Borde an undivided eighth interest in (1), a certain sugar plantation, “now known as Alliance plantation,” measuring 20 arpents by 40 and 80 in depth; (2) a tract adjoining, measuring 10 arpents by 80; and (3) another adjoining tract, measuring 9 arpents by 40 — he meant to convey and did convey to Borde his interest in the whole of Alliance plantation, consisting of all three tracts, notwithstanding that he misapplied the name “Alliance plantation” to the upper 20 arpents alone, and gave only 40 arpents in depth (following the error already mentioned in the inventory of his father’s succession). And this is confirmed by his long neglect of the property, although Mrs. Fernandez had paid part of the price for taxes and costs, deposited the rest with the auctioneer, and expended many thousands of dollars in improving the property, of which she had gone into possession right after the adjudication.
 

 After the Supreme Court had the adjudication to Mrs. Fernandez void, in May, 1881 (Borde v. Etskine, 33 La. Ann. 873, as aforesaid), Joachim Borde sold his undivided one-eighth interest to Mrs. Fernandez.
 

 Meanwhile Mrs. Fernandez had been involved in some litigation, in the United States Circuit Court, with certain creditors holding mortgages on said plantation, claiming a preference over them for the improvements put by her upon the property adjudicated to her. She compromised with these creditors by purchasing their claims.
 

 And about that same time Mrs. Ernestine Erskine, acting in her own behalf, and in behalf of her minor children, Mary Erskine and Clementine Erskine (with the approval of a family meeting), sold to Mrs. Carmen Lesseps her own undivided one-eighth interest and the two-eighths interests of the minors, Mary Erskine and Clementine Erskine, “in the Alliance plantation, situated jn Plaquemines parish,” for “the double purpose of executing the partition by licitation heretofore ordered by the district court of Plaquemines parish, in the suit of Joachim Borde v. Widow William Erskine et al., 33 La. Ann. 873, and of terminating by compromise and transaction the suit of Mrs. Carmen Lesseps, wife of J. A. Fernandez, v. H. S. Buckner et al., No.-, United States Circuit Court, etc.” Tr. 27802, pp. 154, 155 et seq.
 

 There is therefore no doubt in our minds that “Alliance plantation” consisted of the
 
 *1107
 
 whole three tracts of land owned in common and cultivated in partnership - by William Erskine and George Urquhart, having a total front on the river of 39 arpents, and not alone of the upper 20 arpents; that the lower 9 arpents had, and were well known by every one to have, a depth of 80 arpents and not of 40 arpents only.
 

 In the partition suit above mentioned, and in the suit to refer mortgages to the proceeds, every judge, every attorney, every party, every notary, every appraiser, every expert, every surveyor, every auctioneer, knew that he was dealing with
 
 one
 
 plantation, “together with all the improvements thereon, consisting of a dwelling house, sugar house, steam engine, stables, draining machine in the rear, and all the stock attached to said plantation, consisting of 19 mules and all the ploughs, carts, and all and singular the farming utensils, belonging to
 
 said plantation,
 
 the whole appraised at the price and sum of $30,000” (inventory, Tr. 6675, p. 210), and all known as “a certain sugar plantation, with all the buildings and appurtenances thereof,
 
 known as the Alliance plantation,
 
 on the right bank of the Mississippi river at a distance of about 32 miles below the city of New Orleans. The whole divided, according to sketch hereto annexed, into 40 lots.” Proces verbal of auctioneer, July 14. 1876. Tr. 27802, p. 186.
 

 And the sketch referred to, purporting to be a sketch of “Belle Alliance plantation,” and made by DTIemecourt and O. Uncas Lewis, surveyors, on June 1, 1876, includes all three tracts of land, as shown on the sketch hereto annexed, and divides them into 49 lots. Tr. 6675, p. 230.
 

 Dr. J. B. Wilkinson and P. Leonard, sworn as to indivisibility in kind, call it “Alliance plantation.”
 

 George Urquhart himself (Tr. 6675, pp. 60-87) speaks of the place as’ one plantation and calls it “Alliance plantation.”
 

 We therefore find, from the foregoing lengthy recital, thqt John Erskine, Widow Ernestine, Mary Erskine, and Clementine Erskine have all parted with all interest in Alliance plantation, consisting of all the lands shown in the sketch hereto annexed. And it is of no consequence that, when John Erskine sold to Dr. Borde, he gave the name of “Alliance plantation” to the upper 20 arpents alone, or that he erroneously described the lower 9 arpents as having only 40 arpents in depth (repeating the error in the inventory of his father’s succession); for the fact is that “Alliance plantation” was well known to have 39 arpents front on the river, and that the lower 9 acres had full 80 arpents in depth.
 

 Nor is it of any consequence that
 
 George Urquhart and his wife
 
 complicated the whole situation, by severally and separately mortgaging different parts of the same plantation through “complicated conjeries of mortgages,” affecting separate parts thereof. See Borde v. Erskine, 33 La. Ann. 877. We will deal with that situation when and if it comes before us. Suffice it to say that we find that the present plaintiffs have no interest in any part of the land involved.
 

 III.
 

 It is therefore unnecessary to pass upon the validity of the confirmation and ratifications herein attacked by plaintiffs. They have no interest in doing so, since the validity vel non of said confirmations is not necessary to defendant’s right to the property involved.
 

 Decree.
 

 The judgment appealed from is therefore reversed, and it is now ordered that plaintiffs’ demand be rejected, at their cost in both courts.