ROGERS, Justice.
 

 The Board of Commissioners of the Orleans Levee District sued Abraham L. Shushan, Herbert W. Waguespack, Henry J. Miller, Newman, Harris & Company, Robert J. Newman, and Norvin T. Harris, Jr., to annul a certain contract on the ground that it had been procured by fraud, and to recover the sum of $496,234.48, which plaintiff averred it had been defrauded of as a result of the illegal contract. The petition contains an alternative. demand for the recovery of $360,680.83 as an excessive payment of commissions under the contract, in the event that the charges of fraud set forth in the main demand are not sustained.
 

 The defendants, Newman, Harris & Company, Robert J. Newman, and Norvin T. Harris, Jr., answered the petition. The other defendants, Abraham L. Shushan, Herbert W. Waguespack, and Henry J. Miller filed exceptions óf misjoinder of parties defendant. The exceptions were maintained and, as to the exceptors, plaintiff’s
 
 *603
 
 suit was dismissed without prejudice. Plaintiff appealed.
 

 The exception of misjoinder is dilatory in character and must be determined on the face of the petition. The test to be applied in considering the plea is whether the petition shows that the parties, plaintiffs or defendants, have a common interest in the subject matter of the suit. Reardon v. Dickinson, 156 La. 556, 100 So. 715; Erskine Heirs v. Gardiner, 166 La. 1098, 118 So. 453.
 

 We shall, therefore, examine the petition in order to ascertain whether its allegations show the existence of a community of interest among the defendants with respect to plaintiff’s demand.
 

 It is alleged in the petition that Abraham L. Shushan, Herbert W. Waguespack, and Henry J. Miller, defendants, are citizens of the State of Louisiana and domiciled in the City of New Orleans. Newman, Harris & Company is a commercial partnership domiciled in the city of New Orleans, Pariáh of Orleans, State of Louisiana, and is composed of Robert J. Newman, a citizen of the State of Louisiana, domiciled in the Parish of Jefferson, and Norvin T. Harris, Jr., a citizen of the State of Louisiana, also domiciled in the City of New Orleans.
 

 It is further alleged that plaintiff Levee Board is charged by law with the assessment, collection, custody and disbursement of funds derived from taxes levied on all taxable property in the Parish of Orleans; that in carrying out the objects and purposes for which it was created, it had, prior to 1936, issued several series of bonds aggregating about $21,000,000; that of the bonds issued prior to 1936, certain issues could be called for payment under certain conditions and refunded and that the refunding of these bonds would benefit the Levee Board, the people of the City of New Orleans and the State of Louisiana; that a meeting of the Commissioners of the Levee Board was called for January 10, 1936, to consider and act 'upon a proposal expected to be submitted in connection with refunding some of these outstanding obligations;, that at this meeting defendant Herbert W. Waguespack, one of the Commissioners of. plaintiff Board and Chairman of its Finance. Committee, moved that the proposal of defendants Newman, Harris & Company be. accepted; that a motion was unanimously passed accepting the proposal of Newman, Harris & Company, and that defendant Waguespack not only moved the passage of said motion but voted therefor; and that, as a result of said action, the contract between the plaintiff Board and Newman,, Harris & Company was authorized and signed; that on January 28, 1937, there was another meeting of the plaintiff Board to consider an application of Newman, Harris & Company for an extension of the* aforesaid contract; a motion to grant the extension was offered and was seconded by-defendant Waguespack, and that defendant: Waguespack voted in favor of the motion, for extension; that as a result of the contract so made and extended, defendants. Newman, Harris & Company proceeded to. make necessary arrangements for the refunding of plaintiff’s bonds and these refunding operations, three in number, are described in Article X of the petition; after the refunding operations, Newman, Harris-
 
 *605
 
 & Company presented an account to plaintiff claiming that its contract commission of 25% of the savings and gains of the Board on Refunding Operation No. 1 amounted to $235,434.15; that this amount was paid Newman, Harris & Company on January 2, 1937; after Refunding Operation No. 2 was accomplished, Newman, Harris & Company presented an account for a commission of $99,764.83 on that operation, and was paid this amount on September 4, 1937; under Refunding Operation No. 3, Newman, Harris & Company presented an account, claiming a commission of $161,032.50, and this amount was paid to them on October -4, 1937; that the total commissions, therefore, paid amounted to $496,231.48, which is the amount of the demand in this suit; that it was not until August 1939, the plaintiff Board discovered that; prior to July 10, 1936, the date of the making of the contract with Newman, Harris & Company, the contract was obtained from the Board by the fraud, bribery and conspiracy of all of the .defendants herein, in that they wrongfully and illegally conspired and colluded together and devised a scheme and artifice to defraud plaintiff and to obtain, by fraudulent means, money from plaintiff and from the taxpayers of the Parish of Orleans and State of Louisiana by illegally and fraudulently obtaining from plaintiff the contract ostensibly between plaintiff and Newman, Harris & Company, in connection with the refunding operations, to the unlawful advantage and enrichment of all of the defendants and of Charles Fitere (now deceased) ; that the plan was submitted and the contract obtained all as means to defraud plaintiff; that all the defendants, previous to the making of the contract, planned the fraudulent scheme and agreed upon their participation in the profits thereof, if successful, that is, after the conspirators deducted their expenses of the operations, the defendant Shushan was to receive 33%%, or $132,740; the defendant Newman 25%, or $99,555; and the defendant Harris was to receive 25%, or $99,555; the defendant Waguespack was to receive H%%, or $46,459.01, and the defendant Miller was to receive 5%, or $19,911, and that, after the money was paid to Newman, Harris & Company by the plaintiff Levee Board, these sums of money, in accordance with, the previous agreement for its division, were paid to the defendants; thát the payments to Waguespack and' to Fitere (now deceased) were bribes, in that Waguespack was a member of the Levee Board and Chairman of its Finance Committee, and Fitere (now. deceased) was an employee of the plaintiff Board, and that in consideration of the bribe Waguespack moved the acceptance of the proposal of Newman, Harris & Company and urged its acceptance and seconded the motion for its extension and used his influence with the other members of the Board to get them to accept the contract, which they did accept; that the usual charge for services of the kind rendered by Newman, Harris & Company under the contract is not more than 1%% of the principal amount of the bonds refunded, which, in this case, would have amounted to a compensation of only $82,-275, and that Newman, Harris & Company and the other co-conspirators herein knew that to be a fact and that the members of the Board were not familiar with charges
 
 *607
 
 for services of this kind, never having employed brokers to do this kind of work; that the defendants knew at the time, the contract was proposed that the commission on the savings and gains on bonds refunded in this case would net them an enormous sum of money, and that they were dealing with a public board in a matter involving money belonging to the taxpayers of the City of New Orleans dedicated to the purpose of protecting the City of New Orleans against flood waters; that the defendant conspirators took advantage of their knowledge and position and political influence in order to extract a huge sum of public funds from a public board, and that, if members of the plaintiff Board, other than defendant Waguespack, had been advised by Newman, Harris & Company of the enormous sum that would accrue to them, the plaintiff Board would never have entered into the contract, nor would the Board have entered into the contract had it known that one of its members who was Chairman of its Finance Committee, Herbert W. Waguespack, was receiving a bribe represented by a percentage of the commission to be received by Newman, Harris & Company; that the contract so made was, by reason of the fraud and bribery, illegal and void; that the contract did not have the approval of the State Bond and Tax Board, as required by law; and should be so declared judicially, and all the payments made to Newman, Harris & Company and divided among the conspirators should be returned in their entirety to plaintiff by the defendants, and that all the defendants are liable individually and in solido for the return of the entire'amount of such payments. The petition alleges that, in the event the Court should hold that the contract was not induced by fraud and bribery and was therefore valid, then that the calculation of the commission as shown on the account presented by Newman, Harris & Company was erroneous and excessive to the extent of $360,680.83, and, in the alternative, plaintiff álleges this amount should be returned to plaintiff. The prayer is, first, for a judgment against all of the defendants in solido for $496,231.48, the total amount paid in commissions, with interest from dates of payment, and, in the alternative, should the contract of July 10, 1936, be decreed to be legal and binding upon plaintiff, for judgment against each of the defendants in solido in the sum of $360,680.83, with interest from the dates paid, and there is a further prayer for icosts of court and for all general and equitable relief.
 

 Exceptors argue that there is a misjoinder of parties defendant, because plaintiff’s action is not one sounding in tort, but is one for the annulment of a contract to which they were not parties. They, also argue that the petition embraces two demands, the first or primary demand, for the annulment of the contract and the return of the consideration paid thereunder, and the second or alternative demand, for the recovery of an alleged overpayment made in connection with the contract through an error in accounting. Exceptors contend that the demands are inconsistent and mutually destructive.
 

 We shall consider first defendants’ exception of misjoinder as to plaintiff’s alternative demand.
 

 
 *609
 
 Exceptors argue that they can not be joined as parties defendant on this demand, because it is wholly inconsistent with plaintiff’s primary demand; that plaintiff’s primary demand is predicated on its claim that the contract is invalid, because it was procured by fraud, and plaintiff’s alternative demand is founded on the admission that the contract is valid, but that the consideration paid thereunder was excessive; that the main demand is predicated on a charge of fraud, whereas the alternative demand is predicated on a charge of error, and that plaintiff can not maintain its action, which is founded on such inconsistent demands. Defendants’ argument can not prevail.
 

 While it is not ordinarily permissible for a plaintiff to cumulate contrary demands in one action, he may, nevertheless, do so by distinctive alternative allegations. Harrison & Bro. v. Soulabere, 52 La.Ann. 707, 27 So. 111.
 

 Two demands that would be inconsistent, if both were insisted upon, are not at all inconsistent when the demand urged secondly is made only on the condition that the demand first made should not be granted. Haas v. McCain, 161 La. 114, 108 So. 305.
 

 Where plaintiffs’ demands for relief, though inconsistent with one another, are pleaded in the alternative, plaintiffs are not required to elect as to which one of such demands they desire to rely on. Nicol v. Jacoby, 157 La. 757, 103 So. 33.
 

 We do not think it can be properly said that plaintiff, by demanding the return of the alleged excessive amount paid to defendants, admits the validity of the contract in connection with which the payment was made. Plaintiff maintains that the contract was void, because it was procured by fraud, but if the court should find otherwise and therefore compel plaintiff to accept the contract by refusing to annul it, then plaintiff asks that defendants be ordered to return the amount which, through error, they were overpaid for their services. Plaintiff’s demands for relief do not even furnish sufficient grounds for an order compelling plaintiff to elect as to which of the two causes of action it desires to rely upon. Smith v. Donnelly, 27 La.Ann. 98; Johnson v. Mayer, 30 La.Ann. 1203; Nicol v. Jacoby, supra.
 

 We shall next consider defendants’ exception of misjoinder as to plaintiff’s primary demand.
 

 Exceptors argue that only one of two methods of procedure was open to plaintiff, namely, to sue in tort or in contract, and that as the plaintiff does not claim damages, which is the gist of an action in tort, plaintiff’s action is necessarily one based on the contract.
 

 Exceptors say that counsel for plaintiff, in argument in the district court, took that position and also propounded the theory that the alleged conspiracy formed by the defendants constituted a partnership and should be governed by the laws applicable to commercial partnerships. The judge of the district court held that it was not legally possible for the defendants to create a partnership merely by entering into a conspiracy to defraud plaintiffs, and, for that
 
 *611
 
 reason, he maintained the exception of misjoinder and dismissed the suit.
 

 Exceptors contend that counsel fof plaintiff should.not be permitted, in this -Court, to change the position that he assumed in the district court. Exceptors invoke the rule that an appellate court will not consider, for the first time, matters not raised in the court of original jurisdiction. But the rule has reference only to controversies arising under the pleadings or the evidence and not to contentions urged in the argument of counsel. The Supreme Court decides a case on the issues presented by the pleadings or the evidence, and not on the argument of counsel in the court below, or even on the reasons assigned by the trial judge. The fact that the trial judge decides the case on one of the points at issue between the parties does not thereby preclude the Supreme Court from considering and deciding the case on one of the other points.
 

 The nature of a suit must be determined by the facts stated in the petition, and the intention of the petitioner in stating those facts. We have hereinabove set forth in narrative form the essential facts recited in the petition. Plaintiff’s action, as characterized by the allegations of the petition and the demands of the accompanying prayer, is one for the annulment of a contract which plaintiff was fraudulently induced to enter and for the return of the money of which plaintiff was defrauded as the result thereof.
 

 The form of action apparently adopted by plaintiff has been ‘approved by the highest court in other jurisdictions. Thus it has been held that persons induced by fraud to execute a contract may sue to rescind the contract and for the return of the money paid thereon, or may affirm and sue in deceit for damages. Southern Land Development Co. v. Meyer, 230 Ala. 40, 159 So. 245. See, also, Storrs v. Storrs, 130 Fla. 711, 178 So. 841, Pepple v. Rogers, 104 Fla. 462, 140 So. 205.
 

 Briefly stated, the petition exhibits this situation. The defendants conspired to devise a scheme for the purpose of fraudulently procuring from plaintiff a contract ostensibly between plaintiff and Newman, Harris & Company in connection with certain refunding operations, to the unlawful advantage and enrichment of all the defendants and of one Charles Fitere, who is now dead; that, as a result of the conspiracy and fraudulent scheme entered into by defendants, plaintiff and the taxpayers of the City of New Orleans were defrauded of the money ' received by the defendants from plaintiff. The details of the alleged conspiracy are set forth in the petition, including the agreed manner in which the fruits of the conspiracy should be, and in which they were, actually shared by the defendants. One of the defendants was not only a member of the plaintiff board, but also chairman of its finance committee and, as such, moved for the making of the contract, voted for it, seconded and voted on a motion for its extension, and later received from his alleged fellow-conspirators $46,-459.01, his agreed share of the proceeds. As arranged prior to the time the contract with the plaintiff was executed, each- of the other alleged conspirators also received his allotted share of. the money obtained from
 
 *613
 
 plaintiff after the refunding operations were completed.
 

 The plaintiff takes the position, as shown by the allegations of the petition and the prayer, that the contract with Newman, Harris & Company was void, because it was procured by fraud and bribery, and that it was simply one of the instrumentalities used by defendants in their alleged fraudulent scheme to obtain money from the-plaintiff, and, consequently, it should be annulled and the money received by the conspirators as the result of their joint fraud should be returned to the plaintiff.
 

 If it be conceded that the petition fails to allege the essentials required by a partnership, it by no means follows ex-ceptors can be dismissed from the suit on their exceptions of misjoinder. Nor is it important for the purpose of disposing of the exceptions that the name of the action be designated.
 

 The gravamen of plaintiff’s complaint is the alleged fraud practiced upon plaintiff by the defendants acting together in accordance with a preconceived plan and as the result of which plaintiff and the taxpayers were unlawfully deprived of a large sum of money.
 

 It is axiomatic that fraud vitiates all things. Succession of Drysdale, 128 La. 151, 54 So. 701. And the law furnishes a remedy against fraud, when exposed, whatever guise it may assume. Macready v. Schenck, 43 La.Ann. 479, 9 So. 470; Cuselich v. Cuselich, 159 La. 652, 106 So. 20.
 

 We do not think the procedure provided by law for the redress of wrongs should be so restricted as to be used -as a protection to wrongdoers. That is not the purpose of the law. Morgan’s Louisiana & T. R. & S. S. Co. v. Stewart, 119 La. 392, 44 So. 138. When fraud is distinctly and clearly alleged, technical objections to the pleadings should not avail. We are not disposed to hamper by doubtful technicalities the efforts cf persons seeking relief from alleged fraudulent acts perpetrated upon them. In a case such as the one now under consideration, the widest latitude should be extended to such persons, since, they are necessarily, to a considerable degree, unin7 formed of the precise relation existing among the persons charged with wrongdoing. Very often the complainants are compelled to proceed in the dark.
 

 Where fraud is alleged as a basis of the complainant’s right to relief, all persons who participated in the alleged fraud and those who are its beneficiaries are proper parties to the suit. 32 C.J., Sec. 485, pp. 300, 301. See, also, 24 Am.Jur., Sec. 2421, p. 7.
 

 The exceptors argue that even if any liability exists on their part to plaintiff, which they deny, they are not solidarily liable and they can not be joined as defendants in an action brought against Newman, Harris & Company; that there is no common point at issue, because each defendant has the right to set up any special defense he may have against plaintiff's demand.
 

 In Planters’ Oil Mill v. Monroe Waterworks & Light Co., 52 La.Ann. 1243, 27 So. 684, 686, this Court said: “A state of facts is alleged from which, according to
 
 *615
 
 the theory of the petition, the obligation in solido of the two defendants results. If, as the consequence of acts of commission or omission, the solidary liability of two or more persons to another arises, such persons may be sued at one and the same time in the same action for a judgment in solido against them.”
 

 The question of the ultimate liability of each defendant, if any, is not presented for determination on this appeal. The prayer of the petition is not only for a judgment in solido against all the defendants, but is also for all general and equitable relief. Although plaintiff may not be able to obtain relief to the full extent asked for, he may under the prayer for general relief obtain such relief as the nature of the case demands.
 

 The law abhors a multiplicity of actions and favors the institution of suits against all defendants who may be liable for the same original cause and who may have an interest to resist the demands of the plaintiff.' It is apparent that if the ex-ceptors are liable to the plaintiff, it is for a cause which had a common origin, namely, the fraudulent procuring of the contract between plaintiff and Newman, Harris & Company. If the exceptors’
 
 title to
 
 the money which plaintiff alleges defendants, in combination, fraudulently obtained from plaintiff is valid,
 
 it is
 
 better that
 
 the
 
 validity of exceptors’ title be maintained in one action than in several actions. Exceptors have no reasonable ground for complaining that they are joined in a suit attacking their right to retain the consideration received from plaintiff by their codefendants in which consideration they shared. It is too plain for argument that defendants have a common interest to maintain the bona fides of the transaction between plaintiff and Newman, Harris & Company. If defendants are successful in defeating plaintiff’s suit, they will be protected from any further judicial attack on the transaction.
 

 For the reasons assigned, the judgment appealed from is annulled, the exception of misjoinder of parties defendant is overruled, and it is ordered that the case be remanded to the district court for further proceedings according to law. The except-tors are to pay all costs of this proceeding, all further costs to await the final decision in the case.
 

 ODOM, J., takes no part.