MURDOCK, Justice.
Wayne Lamar Jenkins was indicted for trafficking in marijuana, a violation of § 13A-12-231(1), Ala.Code 1975. He filed a motion to suppress evidence obtained pursuant to what he contended was an unlawful search warrant. After a hearing at which ore tenus evidence was presented and the receipt of briefs from Jenkins and the State, the trial court concluded that the search warrant was not supported by probable cause and that it authorized an unconstitutional general exploratory *466 search of Jenkins’s residence. The trial court granted Jenkins’s motion to suppress. The State appealed. See Rule 15.7(a), Ala. R.Crim. P.
The Court of Criminal Appeals, in a plurality opinion, reversed the trial court’s order granting Jenkins’s motion to suppress and remanded the case. See State v. Jenkins, 26 So.3d 458 (Ala.Crim.App.2007). That opinion held that the search warrant was supported by probable cause and that it sufficiently described the items to be seized.
Jenkins petitioned this Court for certio-rari review, alleging, in pertinent part, that the decision of the Court of Criminal Appeals conflicts with prior decisions of that court. See Rule 39(a)(1)(D), Ala. R.App. P. We granted Jenkins’s petition to consider whether the decision of the Court of Criminal Appeals, insofar as it addressed the issue of whether the search warrant in Jenkins’s case was unconstitutionally broad as a general exploratory search warrant, conflicts with its prior decisions on the same point of law.[1]
The plurality opinion of the Court of Criminal Appeals sets out the facts and procedural history of this case:
“The record indicates that on April 22, 2005, Capt. Van Jackson of the Lee County Sheriffs Department received a telephone call from an individual named Ronnie Paul, who resides at Lee Road 482. Paul said that he had seen four men who were attempting to break into his neighbor’s home at Lee Road 212. Paul provided a detailed description of the four men and described the vehicle they were driving. Shortly thereafter, sheriffs deputies stopped a vehicle in the vicinity of Lee Road 212 that matched the description given by Paul. Capt. Jackson testified that the two men inside the vehicle admitted that they had tried to break into the residence located at 100 Lee Road 482, Apartment #2. Based on information received from the two men, the two other suspects were eventually located, and all four were arrested. Capt. Jackson stated in his affidavit in support of his application for a search warrant as follows:
“ ‘After being advised of their rights, all four subjects stated that they had attempted to break into the home because they know that the owners keeps [sic] large sums of marijuana inside the residence. One of the four defendants, Michael Stanford, stated that over the past six months, he has purchased at least an ounce of marijuana from Wayne every week. According to Stanford, each of these transactions occurred in Wayne’s home and there was a large quantity of marijuana present inside the residence. The Lee County Sheriffs Office was able to confirm through a tag placed on a vehicle in the front yard of the home that Wayne Lamar Jenkins is the owner of the residence. A check of Jenkins’ criminal history revealed that he was arrested in 1979 on drug related charges.’
“(C.R. 48.)
“One of the four suspects apprehended by law-enforcement officers, Michael Stanford, gave an interview and stated that he tried to break into Jenkins’s apartment to steal Jenkins’s marijuana. Stanford, who knew Jenkins only as ‘Wayne,’ stated that he had been *467 regularly purchasing marijuana from Wayne for around six months. Stanford told police that he would buy an ounce of marijuana each week and that Wayne always had a large supply available. Stanford recalled that on one occasion, Wayne had four gallon containers that were full of marijuana. Stanford said that at the present time, Wayne probably had at least a pound of marijuana in his apartment. Stanford told investigators that he had purchased ½ ounce of marijuana from Wayne approximately two weeks before the attempted burglary. Stanford said that he and his three friends had been watching the apartment on the day before the attempted burglary to observe the neighborhood and prepare for their attempt.
“The three other suspects all stated that they had attempted to burglarize Jenkins’s apartment to steal Jenkins’s marijuana. They stated that Jenkins kept a large amount of marijuana in his home and that they all decided to break in and steal the contraband. However, none of these three suspects had any personal knowledge that Jenkins kept marijuana inside his apartment.”
26 So.3d at 459-60.
A warrant was issued to Capt. Van Jackson on April 22, 2005, that authorized a search of “[a]ny/all vehicles, people, or buildings located on or within the [curti-lage] of [Jenkins’s] residence” for “[a]ny/all drugs, contraband] or items of evidence connected to but not limited to the (scales, pipes, baggies, cash, weapons, documents, etc.) use, [sale], and/or storage of these type items.” The opinion of the Court of Criminal Appeals continues as follows:
“During the search, law-enforcement officials found over five pounds of marijuana, plastic bags, a financial ledger, a .38-caliber pistol with a box of ammunition, scales, a grinder, rolling papers, and approximately $5,000 in cash. Officers also found a marijuana cigarette in Jenkins’s automobile. In his statement to law-enforcement officers, Jenkins admitted that he had been selling marijuana for approximately six months. He stated that the cash found in his apartment was proceeds from the sale of marijuana. He also stated that he had previously been arrested in Russell County for driving under the influence and possession of marijuana.
“In June 2006, a suppression hearing was held in the trial court. At the hearing, Capt. Jackson testified regarding the circumstances that led to his application for the search warrant. Capt. Jackson stated that on April 22, 2005, the sheriffs office received a telephone call from Ronnie Paul, who told him that he had observed four men attempting to break into a neighbor’s home. Capt. Jackson testified that Deputy Bill McQuire responded to the call and talked with Paul. Paul gave Deputy McQuire a description of the four men, along with a description of the car they were driving. Capt. Jackson said that, after receiving that information from Deputy McQuire, he spotted a car matching the description less than ⅜ mile from the scene of the attempted burglary. Capt. Jackson said that there were two men in the car and that both were taken into custody and interviewed. Before the two men were taken into custody Paul identified them as two of the individuals who attempted to burglarize Jenkins’s residence.
“After the two men were taken into custody and interviewed, the names of the two remaining suspects were disclosed. Eventually all four men, including Stanford, were interviewed. Capt. Jackson testified that the four men each said that they had attempted to break in *468 to Jenkins’s apartment to steal marijuana. Capt. Jackson established that he had had no contact with Stanford before Stanford’s arrest in this case. Capt. Jackson testified that, after reviewing the statements of the suspects, he prepared an affidavit to support the request for a search warrant. Before he applied to the court for the warrant, Capt. Jackson said that he and other officers verified the identity of the individual whom one of the suspects identified as ‘Wayne’ by running a license-plate check through law-enforcement databases with the license number on the automobile parked in front of the residence. That exercise revealed that the owner of the automobile was Wayne Lamar Jenkins. In addition, officers contacted the landlord of the apartment complex, and that individual verified that the apartment was leased to Wayne Lamar Jenkins. Capt. Jackson added that during the course of the investigation, a criminal-background check was conducted, which revealed that Jenkins had had a prior drug arrest in Russell County in 1979.
“Capt. Jackson went to Jenkins’s apartment and conducted the search. During the search, Jenkins was present on the porch of the apartment with other officers. After the search concluded, Capt. Jackson interviewed Jenkins inside the apartment. Jenkins was advised of his Miranda [v. Arizona, 384 U.S. 436 (1966),] rights. After he waived his rights, Jenkins gave a statement in which he admitted selling marijuana from his apartment.”
Jenkins contends that the search warrant, which did not specifically mention marijuana, was unconstitutionally broad. He contends that the Court of Criminal Appeals’ decision conflicts with its prior decisions in Palmer v. State, 426 So.2d 950, 952 (Ala.Crim.App.1983), and Peavy v. State, 336 So.2d 199 (Ala.Crim.App.1976).
Jenkins relies in part on the following discussion in Palmer, 426 So.2d at 952:
“Although Ingram stated that his informant had only observed cocaine in the defendant’s residence, the warrant authorized a search for ‘cocaine, ... or any other illegal substances as described under the provisions of the Alabama Uniform Controlled Substances Act.’ The defendant argues that this improperly authorized a ‘general exploratory search.’
[[Image here]]
“The fact that there was no probable cause to believe that other controlled substances were within the defendant’s residence does not taint the entire warrant so that nothing seized during the course of the execution of the warrant was admissible. That part of the warrant authorizing a search for ‘any other illegal substance,’ although invalid because not based on probable cause, was severable from that portion of the warrant which authorized a search for cocaine.”
Among other things, Jenkins also quotes the following from Peavy, 336 So.2d at 202:
“The Fourth Amendment’s requirement that a warrant particularly describe the place to be searched and the things to be seized makes general searches impossible and prevents seizure of one thing under a warrant describing another and nothing is left to the discretion of the officer executing the warrant as to what is to be taken. The search warrant in this case is a dragnet instrument and cannot pass Constitutional muster.”
The Fourth Amendment to the United States Constitution provides, in pertinent part, that a warrant must “particularly describ[e] the place to be searched, and the persons or things to be seized.” In its *469 brief to this Court, the State argues as follows:
“General warrants or general searches are prohibited by the Fourth Amendment, ‘[t]he problem [posed] by the general warrant is not that of intrusion per se, but of a general, exploratory rummaging in a persons belongings.’ Andresen v. Maryland, 427 U.S. 463, 480 (1976). Again, while the warrant could have been more carefully worded, when reading it in a common sense fashion, in light of the knowledge of Captain Van Jackson who applied for the warrant, it is clear that the clause in the warrant was sufficiently specific and did not allow for a general, exploratory search of Jenkins’s apartment and belongings.”
The State then discusses a decision of the Supreme Court of Montana and a decision of the South Carolina Supreme Court:
“In a similar case, the Supreme Court of Montana held:
“ ‘The appellant next argues that the search warrant is deficient because it described the items to be searched for as “drugs and drug paraphernalia.” It is the appellant’s position that such language is overly broad and could be interpreted to include legal drugs such as aspirin and alcohol.
“ ‘We agree that “drugs and drug paraphernalia” is not the ideal language to use in describing particular items to be searched for in a warrant. Nonetheless, under the circumstances of this case, we find such language to be an adequate description of the items to be seized. Section 46-5-201, MCA, requires that a search warrant particularly describe “the thing, place, or person to be searched and the instruments, articles, or things to be seized.” The search warrant in question describes the place to be searched as Broell’s 1976 green Camaro, and the things to be seized as “certain items which are contraband/evidence/fruits of the crime ... and are particularly described as being drugs and drug paraphernalia.” Moreover, the application for the search warrant reinforces the intended meaning of “drugs and drug paraphernalia” as used in the search warrant. The application states that
“ ‘ “[T]he offense of felony possession of dangerous drugs has been committed and ... in the defendant’s car ... there are now located certain items which are contraband/evidence/fruits of the crime/in-strumentalities and articles used in the commission of a crime and are particularly described as being drugs and drug paraphernalia.”
[[Image here]]
“‘Upon reviewing the search warrant and the application together, the fact that Officer Frederick was to search for and seize illegal drugs is inescapable. The appellant’s contention, that in order to constitute probable cause to search, an officer ought to be able to identify what type or types of illegal contraband the officer expects to find, is unsound. As the state points out, no police officer can anticipate what specific wares a suspected drug dealer will possess at any given time.
[[Image here]]
“State v. Broell, [249 Mont. 117, 121-22,] 814 P.2d 44, 46-47 (Mont.1991).... [2]
*470 “... Further, in the case of illegal drugs, they are readily distinguishable from legal items, and thus, the risk that officers executing the warrant might seize other items in addition to the contraband does not exist. Further, since an officer could search in all the same places whether the warrant specified a search for ‘marijuana’ or ‘illegal drugs’ or ‘drugs’ or any other similar term, the warrant in this case does not increase the likelihood of an unauthorized rummaging through Jenkins’s personal effects. See State v. Williams, [297 S.C. 404, 406-08,] 377 S.E.2d 308, [309-10] (S.C.1989).”
(Emphasis added.)
Common sense and experience suggest that there is merit in the State’s argument. Among other things, it is difficult to understand how, in the circumstances presented here, a warrant worded in the manner the warrant at issue here is worded could result in an unreasonable “rummaging,” since, as the Supreme Court of South Carolina reasoned, marijuana and other illicit drugs would naturally be located in the same types of places. The Court of Criminal Appeals explained in Palmer, 426 So.2d at 952, that that case did not present a
“situation where the other substances were discovered after the particularly described property in the warrant had been found, for the reasons that the police did not know how much cocaine they were searching for or that it would be located in one specific area and because other controlled substances would naturally be found in places where the cocaine would be located.”
Thus, where the police do not know “how much [of a specific substance] they [are] searching for” or whether the substance will be “located in one specific area,”[3] the invasion of a suspect’s privacy resulting from the search itself is no greater in a search conducted pursuant to a warrant naming illicit drugs generally as the object of the search than in a search conducted pursuant to a warrant that specifically names marijuana as the object of the search.[4]
*471 At least given the above-quoted conditions, we are unable to conclude that the search and seizure at issue in the present case ran afoul of the Fourth Amendment prohibition against unreasonable searches and seizures. More specifically, we cannot conclude that the Court of Criminal Appeals erred in concluding that the search conducted in the present case was not a “general exploratory search” in violation of the Fourth Amendment requirement that a warrant “particularly describ[e] ... things to be seized.”
The result reached by the Court of Criminal Appeals in this case was not foreclosed by its decision in Palmer. Indeed, the Court of Criminal Appeals quoted Palmer for the proposition that “ ‘ “ ‘if the purpose is to seize not a specific property, but any property of a specified character, which by reason of its character is illicit or contraband, a specific particular description of the property is unnecessary and it may be described generally as to its nature or character.’ ” ’ ” Jenkins, 26 So.3d at 463 (quoting Palmer v. State, 426 So.2d at 952). Further, under the conditions extant here, we agree with the argument made by the State to the Court of Criminal Appeals that the holding in Palmer is “essentially identical” to the holding of the Court of Criminal Appeals in the present case — at least in terms of its functional effect. See note 4, supra (discussing the operation of the plain-view doctrine). Moreover, the conclusion in Palmer as to the invalidity of the authorization in the warrant to search for “other illegal substances” appears to be dictum. The “other illegal substances” discovered in the course of the police search for cocaine in Palmer were admissible in that case in any event under the plain-view doctrine. Palmer, 426 So.2d at 952-53. Thus it was unnecessary for the Court of Criminal Appeals to have decided the constitutionality of the “other illegal substances” language in the warrant.[5]
Nor does Peavy v. State present an obstacle to the result reached below. The fact that the outcomes in the two cases were different, even though the warrants in the two cases contained similar language, is not enough. What must be determined is whether the holding in Peavy conflicts with the holding of the Court of Criminal Appeals in the present case. That, in turn, depends on whether the legal question as framed by, and as presented to and answered by, the Court of Criminal Appeals in the present case was the same as, or was narrower than, the legal question answered by that court in Peavy. It was narrower.
In Peavy, the supporting affidavit used the term “controlled substances” in describing the object of the search. 336 So.2d at 200. The warrant in Peavy referred to the object of the search using exactly the same term, “controlled substances.” Id. The warrant described the place to be searched, however, as “the person of each and every person present in *472 or near [a particular] mobile home and any mobile vehicle adjacent to said mobile home.” 336 So.2d at 201. The case arose from the seizure of a single amphetamine pill from the dashboard of an automobile that did not belong to the owner of the mobile home identified in the search warrant but that was parked near that mobile home.
Despite the use of the same term in describing the object of the search in the affidavit and in the warrant, the court in Peavy began its very brief — indeed, con-clusory — analysis with the observation that the search warrant in that case was a “complete departure” from the supporting affidavit. The court took note of the requirements of the Fourth Amendment as to the need for specific descriptions of both the thing to be seized and the place to be searched. It thereafter concluded that the warrant in that case was a “dragnet instrument” that did not pass constitutional muster. 336 So.2d at 202.
In the present case, Jenkins did not present any argument to the trial court to the effect that the language of the warrant was unconstitutionally broad in respect to (1) the description of the object of the search, (2) the description of the place to be searched, or (3) the two descriptions taken together or the totality of the warrant. The trial court, apparently ex mero motu, held the language of the warrant to be overly broad, but only in one of these three respects. Specifically, the trial court held that the language in the warrant describing the object of the search was so lacking in specificity that that language, by itself, caused the warrant as a whole to fail. Indeed, the trial court examined the “location to be searched” language in the warrant and specifically found it to be in compliance with the requirements of the Fourth Amendment.
On appeal to the Court of Criminal Appeals, the State argued that the language of the warrant describing the object of the search was not broader than permitted by the Fourth Amendment. In response, Jenkins argued, for the first time, that the description of the object of the search was unconstitutional. That was the limit of the position that Jenkins asked the appellate court to adopt. He did not argue that the language in the warrant describing the place to be searched contributed to the unconstitutionality of the warrant.
The Court of Criminal Appeals responded to the holding of the trial court and to the question framed for it by the parties by holding that the language describing the object of the search was not so lacking in specificity as to cause the warrant to fail. The holding of the Court of Criminal Appeals, like the holding of the trial court, was limited to that question.
In contrast, the holding in Peavy clearly addressed more than simply the description of the object to be searched. As noted, although the supporting affidavit and the warrant both described the object of the search as “controlled substances,” the court in Peavy began its analysis with the criticism that the language of the warrant represented a “complete departure” from its supporting affidavit. It then went on to hold that the warrant constituted an unconstitutional “dragnet instrument.” Clearly, Peavy does not stand for the proposition that the use of a term such as “controlled substances” in a warrant to describe the object of the search is sufficient, in and of itself, to invalidate that warrant. The holding in Peavy, therefore, does not conflict with the narrower, converse holding by the Court of Criminal Appeals in the present case.
Moving beyond the issue whether the Court of Criminal Appeals’ decision conflicts with Palmer and Peavy, the substantive question ultimately presented in this case is as follows: Is the description in *473 the warrant of the object of the search— “[a]ny/all drugs, contraband] or items of evidence connected to but not limited to the (scales, pipes, baggies, cash, weapons, documents, etc.) use, [sale], and/or storage of these type items” — so lacking in specificity as to cause the warrant to be constitutionally defective?[6] We conclude it is not.
Although there is some authority suggesting a different analysis, see, e.g., State v. Casey, (No. 03-MA-159, Oct. 24, 2004) (Ohio App.2004) (not reported in N.E.2d); United States v. Morris, 977 F.2d 677 (1st Cir.1992), a significant number of courts that have addressed the issue likewise have answered questions such as this in the negative. In so doing, they have offered analysis and announced holdings consistent with those provided by the decisions of Montana and South Carolina cited by the State.[7]
In State v. Olson, 32 Wash.App. 555, 648 P.2d 476 (1982),
*474 “[a] deputy sheriff applied for and ob *475 tained a warrant authorizing a search of the defendant’s residence. The Affidavit for Search Warrant stated that a reliable confidential informant had ‘seen a quantity of controlled substance to luit marijuana’ therein. A search warrant was issued authorizing a search for ‘all illicit drugs and controlled substances’ Pursuant to the warrant, defendant’s residence was searched and, as charged in the information, opium, cocaine and phenobarbital, all of which are controlled substances, were found therein.”
32 Wash.App. at 556, 648 P.2d at 477 (emphasis added). The trial court denied the defendant’s motion to suppress based on the alleged failure of the warrant to satisfy the particularity requirement of the Fourth Amendment to the United States Constitution. On appeal, the Washington Court of Appeals affirmed, stating, in part:
“The requirements of particularity are met if the substance to be seized is described with ‘reasonable particularity ’ which, in turn, is to be evaluated in light of ‘the rules of practicality, necessity and common sense. ’ State v. Withers, 8 Wash.App. 123, 126, 504 P.2d 1151 (1972)....
[[Image here]]
“... [T]here was no reasonable likelihood that a violation of the defendant’s rights would occur. The presence of marijuana in a private residence raises a legitimate inference that marijuana may be present throughout the residence.... Therefore, as a practical matter; the language used in the warrant in the present case could not have expanded the scope of a search for marijuana because, in searching for marijuana, the officers ivere authorized to inspect virtually every aspect of the premises. Any other contraband inadvertently found in the course of such lawful search would clearly be subject to seizure pursuant to the ‘plain view’ doctrine.”
Olson, 32 Wash.App. at 557-59, 648 P.2d at 478-79 (some citations omitted; emphasis added).
The Supreme Court of Florida offered the following analysis in Carlton v. State, 449 So.2d 250 (Fla.1984):
“The [lower appellate court] noted that the description requirements of the United States and Florida Constitutions ‘must be given a reasonable interpretation consistent with the type or character of the property sought.’ ... The [lower appellate] court quoted from a federal district court decision ... for the proposition that a looser description is allowable where the property to be seized is not innocuous but is ‘prima facie contraband.’ ...
[[Image here]]
“... We simply cannot uphold the argument that the validity of a search warrant should depend, in large part, on whether the issuing magistrate had the ability and information to describe the property with a greater degree of particularity than he did. A valid warrant is always based on an affidavit which particularly describes the place to be searched and the person and thing to be seized. § 933.05, Fla. Stat. (1981).
“The particularity requirement of warrants has a two-fold purpose. Perhaps the most frequently quoted statement in this regard is that of Justice Butler in Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927):
“ ‘The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the *476 discretion of the officer executing the warrant.’
[[Image here]]
“... We fail to see how justice is being furthered by mandating that a warrant specify which particular controlled substance is to be seized. In most instances where ... probable cause exists to suspect [an] individual of possessing and/or trafficking in a controlled substance, there is a high probability that the offense involves more than one particular controlled substance. We do not believe that a valid purpose is being served by requiring our law enforcement personnel to name each particular substance rather than the term ‘controlled substances.’ We do not think this is such a general term that it allows for abuse and unbridled discretion by law enforcement personnel or allows for a ‘general search’ as that term is used in prior United States Supreme Court or Florida decisions. To hold otherwise would hamper law enforcement unjustifiably.”
449 So.2d at 251-52. See also United States v. Horne, 198 Fed.Appx. 865, 871 (11th Cir.2006) (holding that a warrant authorizing a search of a house for “drugs” and “drug paraphernalia,” based on a supporting affidavit attesting to the purchase of “nine pieces of rock cocaine,” satisfied the United States Constitution’s Fourth Amendment requirement for a search warrant to “ ‘particularly describ[e]’ ” “ ‘the person or things to be seized.’ U.S. Const. Amend. IV .... ”).
In State v. Stromberg, 783 P.2d 54, 58 (Utah Ct.App.1989), an informant’s affidavit stated that the informant had seen “marijuana pipes” in the defendant’s house and that the informant had observed the defendant smoking marijuana in his home on three or four occasions. A warrant authorizing a search for “controlled substances” and “drug paraphernalia” was held to pass constitutional muster:
“The warrant merely specified controlled substances and drug paraphernalia. We are not persuaded that this description is so broad as to offend the fourth amendment’s prohibition against warrants not ‘particularly describing the ... things to be seized.’ See U.S. Const, amend. IV. The trial court determined that there was a reasonable inference from the affidavit that controlled substances and paraphernalia, other than marijuana and marijuana pipes, would be found in defendant’s home. Even if this inference were erroneous, generic descriptions of property, although not favored, have been held permissible in cases involving contraband. See State v. Gallegos, 712 P.2d 207, 209 (Utah 1985).”
As the United States Court of Appeals for the Fourth Circuit stated in United States v. Ladd, 704 F.2d 134, 136 (4th Cir.1983):
“ ‘[T]he test for the necessary particularity is a pragmatic one. The degree of specificity required may necessarily vary according to the circumstances and type of items involved .... There is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of the items to be seized.’
“United States v. Torch, 609 F.2d 1088, 1090 (4th Cir.[1979]), cert. denied, 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (19[80]) (citations omitted).
“The instant warrant fully satisfies the particularity requirement. The items to be seized were limited to those relating to ‘the smuggling, packing, distribution and use of controlled substances.’ More specificity is not required by the Constitution.”
*477 In light of the foregoing, we affirm the judgment of the Court of Criminal Appeals reversing the trial court’s order suppressing the evidence at issue. To repeat the conclusion of the Supreme Court of Florida in Carlton, we should take care not to “hamper law enforcement unjustifiably.”
AFFIRMED.
STUART, SMITH, BOLIN, and PARKER, JJ., concur.
SEE, LYONS, and WOODALL, JJ., dissent.
COBB, C.J., recuses herself.

. The Court of Criminal Appeals concluded that the materials supplied by the State in support of the application for the search warrant provided probable cause for the issuance of a search warrant. Jenkins, 26 So.3d at 458. We declined certiorari review as to that holding.

. Justice See contends in his dissenting opinion that Broell is inapposite in light of the decision of the United States Supreme Court in Groh v. Ramirez, 540 U.S. 551, 124 S.Ct. *470 1284, 157 L.Ed.2d 1068 (2004). Groh, however, is distinguishable. The application described the objects to be searched for in Groh as
" 'any automatic firearms or parts to automatic weapons, destructive devices to include but not limited to grenades, grenade launchers, rocket launchers, and any and all receipts pertaining to the purchase or manufacture of automatic weapons or explosive devices or launchers.' ”
540 U.S. at 554, 124 S.Ct. 1284. In the warrant, however,
“in the space set aside for a description of the items to be seized, [it was] stated that the items consisted of a ‘single dwelling residence ... blue in color.’ In other words, the warrant did not describe the items to be seized at all."
540 U.S. at 558, 124 S.Ct. 1284.

. The quoted conditions are in accord with those contemplated by the following statement in one well-respected treatise: "fl]t has been held that evidence is admissible ... where the description is too general in the probable cause sense but yet did not broaden the intensity or length of the search." Wayne R. LaFave, Search and Seizure § 4.6(0 n. 148 (4th ed. 2004) (emphasis added).

. Further, although our analysis does not depend on the use of the "plain view” doctrine, it also may be noted that the invasion of a suspect's privacy that results from a seizure of his personal property likewise is no different in the two searches, given the fact that the locations in which the authorities may search will be the same.
"Since the police had a valid warrant to search for one controlled substance in the defendant's residence, they could properly seize any other article of incriminating character, including other controlled substances, they inadvertently came across in the course of the search. '[I]t is generally *471 the rule that when officers in the course of a bona fide effort to execute a search warrant for narcotics or dangerous drugs discover articles which although not included in the warrant are reasonably identifiable as contraband, they may seize them whether they are in plain sight or come into plain sight subsequently as a result of the officers’ effort.’ 28 C.J.S. Drugs And Narcotics Supplement, Section 138 (1974).”
Palmer, 426 So.2d at 952-53 (citation omitted). But, of course, in the present case, the police did not even go this far. The drug specifically mentioned in the supporting affidavit was marijuana; that was the only drug seized and the only drug in relation to which Jenkins was convicted.

. As an aside, we note that the Court of Criminal Appeals’ conclusion in Palmer as to the unconstitutionality of the "other illegal substances” language is contrary to substantial authority from other jurisdictions discussed infra.

. Although Jenkins argues that the reference to "[a]ny/all drugs” in the warrant is even broader than the "reference to 'controlled substances' in Peavy," under the circumstances presented and in light of the full description of the object of the search as quoted in the text, that description — "[a]ny/all drugs” — can reasonably be read only as authorizing the search for illegal drugs and related paraphernalia.

. Justice Woodall’s dissent criticizes the State, and by extension this opinion, for reliance on what it describes as an "argument” made for the first time to this Court. Specifically, the dissent notes that the State argues that " ‘since an officer could search in all the same places whether the warrant specified a search for "marijuana” or "illegal drugs” or “drugs” or any similar term, the warrant in this case does not increase the likelihood of an unauthorized rummaging through Jenkins’s personal effects.’ State’s brief, at 21-22.” 26 So.3d at 485. The dissent asserts that this argument, not having been made by the State in its brief to the Court of Criminal Appeals, comes too late. The dissent relies in this regard on the proposition stated in Avis Rent A Car Systems, Inc. v. Heilman, 876 So.2d 1111, 1124 n. 8 (Ala.2003), that " ‘[a]n argument not made on appeal is abandoned or waived.’ ” 26 So.3d at 485.
Properly viewed, however, the rule upon which the dissent attempts to rely is one that generally prevents an appellant from raising on appeal a question or theory that has not been preserved for appellate review, not the provision to a higher court of an additional specific reason or authority for a theory or position asserted by the party in the lower court. The fundamental rule in this regard, as stated in Corpus Juris Secundum, is that a "higher court normally will not consider a question which the intermediate court could not consider.” 5 C.J.S. Appeal and Error § 977 (2007). However, ”[a]lthough on appeal from an intermediate court the higher court may be limited to the questions of law raised or argued at the trial, it is not limited to the arguments there presented.” 5 C.J.S. Appeal and Error § 978 (2007) (emphasis added). In other words, ”[n]ew arguments or authorities may be presented on appeal, although no new questions can be raised.” 4 C.J.S. Appeal and Error § 297 (emphasis added).
In Kerbs v. California Eastern Airways, Inc., 33 Del.Ch. 69, 80, 90 A.2d 652, 659 (1952), for example, the court put it this way:
"It should be noted that the plaintiffs did not call Section 9 of the General Corporation Law to the [trial court’s] attention, but argued solely that the presence of interested directors could not be ignored in determining whether the plan received a majority favorable vote at the Board’s meeting. While the plaintiffs did not urge this precise reason for the illegality of the directors’ act upon the Chancellor, they did, however, argue its illegality. We will not permit a litigant to raise in this court for the first time matters not argued below where to do so would be to raise an entirely new theory of his case, but when the argument is merely an additional reason in support of a proposition urged below, there is no acceptable reason why in the interest of a speedy end to litigation the argument should not be considered. We think the point falls within the class of additional reasons supporting the plaintiffs’ theory.”
(Emphasis added.) See also Board of Comm'rs of Orleans Levee Dist. v. Shushan, 197 La. 598, 611, 2 So.2d 35, 39-40 (1941)
*474 (“The rule [that an appellate court will not consider, for the first time, matters not raised in the court of original jurisdiction] has reference only to controversies arising under the pleadings or the evidence and not to contentions urged in the argument of counsel. The Supreme Court decides a case on the issues presented by the pleadings or the evidence, and not on the argument of counsel in the court below, or even on the reasons assigned by the trial judge.”).
In the earlier case of Persky v. Bank of America National Ass’n, 261 N.Y. 212, 185 N.E. 77 (1933), the Court began by noting that
" 'it is well settled that this court will not, for the purpose of reversing a judgment, entertain questions not raised or argued at the trial, or upon the intermediate appeal.' "
261 N.Y. at 217, 185 N.E. at 79 (quoting Martin v. Home Bank, 160 N.Y. 190, 199, 54 N.E. 717 (1899) (emphasis added)). The court thereafter explained that this rule was not applicable in the case before it:
"In our review we are confined to the questions raised or argued at tire trial but not to the arguments there presented. 'Nor is it material whether the case was well presented to the court helow, in the arguments addressed to it. It was the duly of the judges to ascertain and declare the whole law upon the undisputed facts spread before them; and it is our duty now to give such judgment as they ought to have given.’ (Oneida. Bank v.
Ontario Bank, 21 N.Y. 490, 504 [ (1860) ].)” 261 N.Y. at 218, 185 N.E. at 79 (all but first emphasis added).
The foregoing principles have been recognized in Alabama cases. Although not dealing with the precise appellate review issue presented here, the case of Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 960 (Ala.2004), addressed the possibility of a litigant "miscalculat[ing] the applicability of the appropriate rule of law.” The Court cited Williams-Guice v. Board of Education of Chicago, 45 F.3d 161, 164 (7th Cir.1995), for the proposition that
" 'litigants’ failure to address the legal question from the right perspective does not render [the appellate court] powerless to work the problem out properly. A court of appeals may and often should do so unbidden rather than apply an incorrect rule of law to the parties' circumstances.”
Also in Hodurski, this Court quoted with approval from another federal decision:
" ' "Appellate review does not consist of supine submission to erroneous legal concepts even though none of the parties declaimed the applicable law below. Our duty is to enunciate the law on the record facts. Neither the parties nor the trial judge, by agreement or passivity, can force us to abdicate our appellate responsibility.” ’ ”
Hodurski, 899 So.2d at 960 (quoting Forshey v. Principi, 284 F.3d 1335, 1357 n. 20 (Fed.Cir.), cert. denied, 537 U.S. 823, 123 S.Ct. 110, 154 L.Ed.2d 33 (2002), quoting in turn Empire Life Ins. Co. of America v. Valdak Corp., 468 F.2d 330, 334 (5th Cir.1972)).
In Home Indemnity Co. v. Reed Equipment Co., 381 So.2d 45, 50 (Ala.1980), the Court explained that “[t]he rule requiring adherence to the theory relied on below ... does not mean the parties are limited in the appellate court to the same reasons or arguments advanced in the lower court upon the matter or question in issue. 5 Am.Jur.2d, Appeal and Error, § 546 at 32.” (Emphasis added), relied upon in Associated Gen. Contractors Workers Compensation Self Ins. Fund v. Williams, 982 So.2d 557 (Ala.Civ.App.2007). See also Alabama Medicaid Agency v. Beverly Enters., 521 So.2d 1329, 1333 (Ala.Civ.App.1987) (apparently stating the general rule discussed above, albeit using different terminology, namely "that an appellant may present new theories in support of its position for the first time on appeal” (emphasis added)).
In the present case, the question whether the language of the warrant describing the object of the search was specific enough to satisfy the "thing-to-be-seized” requirement within the so-called "particularity clause” of the Fourth Amendment to the United States Constitution has existed throughout. In response to a motion to suppress, the trial court decided this issue against the State and in favor of Jenkins. The trial court’s order analyzed the issue in-depth and concluded that the language of the warrant did not satisfy the particularity clause of the Fourth Amendment. The State timely sought review of this order in the Court of Criminal Appeals pursuant to Rule 15.7(a), Ala. R.Crim. P., maintaining that the trial court had erred in its ruling against the State on this issue. The State, by its citation to this Court of the Montana and South Carolina Supreme Court cases quoted in the text, is simply giving this Court the benefit of an additional "precise reason” and authority as to why, as a matter of law, the trial court wrongly decided this issue.